[No. E030820. Fourth Dist., Div. Two. Nov. 6, 2002.]

DONALD IMBLER, Plaintiff and Respondent, v.
PACIFICARE OF CALIFORNIA, INC., et al., Defendants and Appellants.

## COUNSEL

Konowiecki & Rank, K & R Law Group, Jon N. Manzanares, Gary S. Pancer; Greines, Martin, Stein & Richland and Timothy T. Coates for Defendants and Appellants.

Shernoff Bidart & Darras, Michael J. Bidart and Jeffrey Isaac Ehrlich for Plaintiff and Respondent.

## OPINION

**WARD, J.**—Defendants and appellants PacifiCare of California, Inc., and PacifiCare Health Systems, Inc., appeal from a trial court's order denying their petition to compel arbitration in a lawsuit filed by plaintiff and respondent Donald Imbler. We affirm the order.

### FACTUAL AND PROCEDURAL HISTORY

On July 20, 2001, plaintiff filed a complaint for damages against defendants PacifiCare of California, Inc., and PacifiCare Health Systems, Inc. (collectively PacifiCare).

The complaint alleged as follows: Plaintiff had developed prostate cancer. Plaintiff's doctors recommended that he undergo proton beam therapy.

Because plaintiff's employer was in the process of changing health plans and entering into a new contract with PacifiCare, plaintiff asked PacifiCare if it would cover the therapy. PacifiCare told plaintiff that the therapy would be covered. Plaintiff subsequently enrolled in the PacifiCare plan, but PacifiCare denied coverage for the therapy. Plaintiff complained to the California Department of Managed Health Care (Department). When the Department submitted an inquiry to PacifiCare, PacifiCare advised the Department that it would cover the therapy. Thereafter, plaintiff received the therapy but PacifiCare then refused, and continues to refuse, to pay for the treatment. Based upon these allegations, plaintiff asserted causes of action for breach of the duty of good faith and fair dealing, breach of contract, unfair business practices under Business and Professions Code section 17200, intentional misrepresentation and negligent infliction of emotional distress.

On August 27, 2001, PacifiCare filed a notice of petition and petition to compel arbitration and for stay of proceedings (hereafter petition). On November 26, 2001, the trial court denied the petition. PacifiCare appeals.

On appeal, PacifiCare raises two issues:

(1) Whether Health and Safety Code section 1363.1 (section 1363.1) is preempted by the Federal Arbitration Act (FAA), or whether it is saved from preemption by the McCarran-Ferguson Act.

(2) Assuming arguendo that section 1363.1 applies, whether PacifiCare's plan documents comply with the disclosure requirements imposed by section 1363.1.

ANALYSIS

### I. *The FAA Does Not Preempt Section 1363.1*

■ We first address preemption. Based on a recent case on point, *Smith v. PacifiCare*,[1] we conclude that the FAA does not preempt section 1363.1 by operation of the McCarran-Ferguson Act.

### A. *Background*

PacifiCare is a licensed heath care service plan. In a declaration filed in support of PacifiCare's petition, it stated: "PacifiCare is licensed in accordance with the Knox-Keene Health Care Service Plan Act of 1975, as amended, Cal. Health & Safety Code Section 1340 et seq. PacifiCare is a health care service plan that arranges for and facilitates the provision of health services for employer groups with which they contract."

---

[1] *Smith v. PacifiCare Behavioral Health of Cal., Inc.* (2001) 93 Cal.App.4th 139, 150 [113 Cal.Rptr.2d 140] (*Smith*).

"In California, health care service plans (or HMO's) are licensed and regulated by the Department of Managed Care under the Knox-Keene Act."[2] One of the provisions of the act is section 1363.1; it provides that a health care service plan that includes terms requiring binding arbitration to settle disputes, or providing for a waiver of the right to a jury trial, shall include the terms requiring binding arbitration as set forth under section 1363.1.

PacifiCare contends that section 1363.1 does not apply because it is preempted by the FAA. "The FAA applies to any 'contract evidencing a transaction involving commerce' which contains an arbitration clause. (9 U.S.C. § 2.) Section 2 of the FAA provides that arbitration provisions shall be enforced, 'save upon such grounds as exist at law or in equity for the revocation of any contract.' (*Ibid.*) Thus, a state court may, without violating section 2, refuse to enforce an arbitration clause on the basis of 'generally applicable contract defenses, such as fraud, duress, or unconscionability.' (*Doctor's Associates, Inc. v. Casarotto* (1996) 517 U.S. 681, 687 [116 S.Ct. 1652, 1656, 134 L.Ed.2d 902, 909] (*Casarotto*).) Critically, however, a state court may not defeat an arbitration clause by applying state laws 'applicable *only* to arbitration provisions.' (*Ibid.*)"[3]

In *Erickson v. Aetna Health Plans of California, Inc.*,[4] we held that section 1363.1 was preempted by the FAA. We noted that section 1363.1 "imposes on arbitration clauses in health care plans 'a special notice requirement not applicable to contracts generally,' " and such "arbitration clauses must satisfy special requirements as to form and content which are not imposed on contracts generally."[5] Hence, section 1363.1 " ' "takes its meaning precisely from the fact that a contract to arbitrate is at issue . . . ," ' and, consequently, conflicts with section 2 of the FAA."[6]

In *Smith*, the Second Appellate District, Division Three, recognized that "[t]he FAA would appear to apply to the PacifiCare agreements at issue here."[7] *Smith*, however, took the analysis one step further. *Smith* analyzed the McCarran-Ferguson Act and held that the FAA cannot preempt section 1363.1 because of the operation of the McCarran-Ferguson Act. *Erickson* did not address the McCarran-Ferguson Act.[8]

---

[2]*Smith, supra,* 93 Cal.App.4th 139, 150.

[3]*Smith, supra,* 93 Cal.App.4th 139, 151.

[4]*Erickson v. Aetna Health Plans of California, Inc.* (1999) 71 Cal.App.4th 646 [84 Cal.Rptr.2d 76] (*Erickson*).

[5]*Erickson, supra,* 71 Cal.App.4th 646, 652.

[6]*Erickson, supra,* 71 Cal.App.4th 646, 652.

[7]*Smith, supra,* 93 Cal.App.4th 139, 151.

[8]On October 15, 2002, Division Seven of the Second Appellate District in *Pagarigan v. Superior Court* (2002) 102 Cal.App.4th 1121, 1134 [126 Cal.Rptr.2d 124], agreed with the

B.  *Smith Decided the Precise Issue in This Case: The McCarran-Ferguson Act Precludes the Preemption of Section 1363.1 by the FAA*

The *Smith* court aptly described the McCarran-Ferguson Act as follows:

"Congress enacted McCarran-Ferguson in 1945.[9] It sets forth a policy declaration that it is in the public interest that the primary regulation of the business of insurance be in the states, not in the national government. (15 U.S.C. § 1011.) It was passed in response to a United States Supreme Court decision (*United States v. South-Eastern Underwriters Assn.* (1944) 322 U.S. 533 [64 S.Ct. 1162, 88 L.Ed. 1440]), which held that the business of insurance was 'commerce' within the meaning of the commerce clause and therefore the business of insurance was subject to all federal laws, including those relating to antitrust. (*Id.* at p. 553 [64 S.Ct. at pp. 1173-1174].) This was a major change in the law. In 1869, the Supreme Court had held (*Paul v. Virginia* (1868) 75 U.S. (8 Wall.) 168, 183 [19 L.Ed. 357, 361]) that insurance was not 'commerce' and therefore was not subject to federal commerce clause statutes."[10]

"*The clear purpose of McCarran-Ferguson was to abrogate this change and to insure that the states would continue to enjoy broad authority in regulating the dealings between insurers and their policyholders. (Cochran v. Paco, Inc.* (5th Cir. 1979) 606 F.2d 460, 462-463 [51 A.L.R.Fed. 731].) As the Supreme Court itself later explained, 'The McCarran-Ferguson Act was passed in reaction to this Court's decision in *United States v. South-Eastern*

---

analysis in *Smith*: "[W]e agree with Division Three in *Smith* that *Erickson*'s analysis of whether the FAA preempts section 1363.1 does not hold up when the McCarran-Ferguson Act is considered."

[9]"McCarran-Ferguson provides:

"Section 1011. 'Congress hereby declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States.'

"Section 1012. '(a) *State Regulation.* [¶] *The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.*

" '(b) *Federal Regulation.* [¶] No Act of Congress shall be construed *to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance,* or which imposes a fee or tax upon such business, *unless such Act specifically relates to the business of insurance. Provided,* That after June 30, 1948, the Act of July 2, 1890, as amended, known as the Sherman Act, and the Act of October 15, 1914, as amended, known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended [(15 U.S.C.A. 41 et seq.)], *shall be applicable to the business of insurance to the extent that such business is not regulated by State law.*' (Most italics added.)" (Boldfaced italics added.)

[10]*Smith, supra,* 93 Cal.App.4th 139, 152-153.

*Underwriters Assn.*, 322 U.S. 533 [, *supra*]. Prior to that decision, it had been assumed, in the language of the leading case, that "[i]ssuing a policy of insurance is not a transaction of commerce." *Paul v. Virginia*, [75 U.S.] (8 Wall.) 168, 183[, *supra*]. Consequently, regulation of insurance transactions was thought to rest *exclusively* with the States. In *South-Eastern Underwriters*, this Court held that insurance transactions were subject to federal regulation under the Commerce Clause, and that the antitrust laws, in particular, were applicable to them. Congress reacted quickly. . . . The McCarran-Ferguson Act was the product of this concern. Its purpose was stated quite clearly in its first section; Congress declared that "the continued regulation and taxation by the several States of the business of insurance is in the public interest." 59 Stat. 33 (1945), 15 U.S.C. § 1011. . . . [¶] . . . In context, however, it is relatively clear what problems Congress was dealing with. Under the regime of *Paul v. Virginia, supra*, States had a free hand in *regulating the dealings between insurers and their policyholders*. Their *negotiations, and the contract which resulted*, were not considered commerce and were, therefore, *left to state regulation*. The *South-Eastern Underwriters* decision threatened the continued supremacy of the States in this area. The McCarran-Ferguson Act was an attempt to turn back the clock, to assure that the *activities of insurance companies in dealing with their policyholders would remain subject to state regulation.*' (*SEC v. National Securities, Inc.* (1969) 393 U.S. 453, 458-459 [89 S.Ct. 564, 567-568, 21 L.Ed.2d 668, 675-676] (*National Securities*), italics added.)"[11]

"Thus, there seems little question that Congress, by its passage of McCarran-Ferguson, 'returned to the states the plenary power to regulate the business of insurance that they had enjoyed prior to the *South-Eastern Underwriters* decision. If Congress intended to invoke its Commerce Clause powers to occupy part of the field of insurance regulation, it would expressly say so.' (*Cochran v. Paco, Inc., supra*, 606 F.2d at p. 463, fn. omitted.)[12]"[13]

"The mandate of McCarran-Ferguson appears to be both plain and clear. An act of Congress may not be construed to 'invalidate, impair, or supercede' a state law enacted '*for the purpose of regulating the business of*

---

[11]*Smith, supra*, 93 Cal.App.4th 139, 153-154, first italics added.

[12]"The legislative history of McCarran-Ferguson makes clear that it was Congress's intent that any law relating to interstate commerce that did not specifically relate to insurance would be subject to the provisions of McCarran-Ferguson. As one of the authors of the legislation, Senator Ferguson, put it during Senate debate, 'If there is on the books of the United States a legislative act which relates to interstate commerce, if the act does not specifically relate to insurance, it would not apply at the present time. Having passed the bill now before the Senate, if Congress should tomorrow pass a law relating to interstate commerce, and should not specifically apply the law to the business of insurance, it would not be an implied repeal of this bill, and this bill would not be affected because the Congress had not . . . said that the new law specifically applied to insurance. (91 Cong. Rec. 481 (1945).' (*Cochran v. Paco, Inc., supra*, 606 F.2d at p. 463, fn. 7.)"

[13]*Smith, supra*, 93 Cal.App.4th 139, 153-154.

*insurance'* unless the federal act 'specifically relates to the business of insurance.' (15 U.S.C., § 1012(b), italics added.) There is no dispute between the parties that the application of the FAA would have the effect of invalidating, impairing and superceding the operation of section 1363.1; indeed, it would absolutely preclude its use to regulate the wording and organization of PacifiCare's arbitration clauses. Similarly, there is no argument that the FAA is a statute of *general application* which *does not specifically relate* to the business of insurance. Thus, in order for us to conclude that McCarran-Ferguson does preclude the application of the FAA in these consolidated cases we need only address the integrally related questions as to [1] whether health care service plans, such as PacifiCare, are engaged in the business of insurance and [2] whether section 1363.1 is a statute enacted 'for the purpose of regulating the business of insurance.' "[14]

The *Smith* court answered both questions in the positive.

### 1. *PacifiCare Is Engaged in the Business of Insurance*

As to the first question, *Smith* concluded that PacifiCare is engaged in the business of insurance: "HMO's or health care service plans, such as PacifiCare, are engaged in providing a service that is a substitute for what previously constituted health *insurance*. 'The only distinction between an HMO . . . and a traditional insurer is that the HMO provides medical services directly, while a traditional insurer does so indirectly by paying for the service [citation], but this is a distinction without a difference. [Citations.] In the end, HMOs function the same way as a traditional health insurer. The policyholder pays a fee for a promise of medical services in the event that he should need them. It follows that HMOs . . . are in the business of insurance.' [Citation.] . . . We believe the reasoning of these cases is sound and we have no trouble also concluding that PacifiCare, as a health care service plan (or HMO), is engaged in the business of insurance."[15]

Moreover, *Smith* recognized that "the Legislature has reached the same conclusion in a very public way. It has *expressly* recognized that health care service plans in California *are engaged in the business of insurance within the meaning of the McCarran-Ferguson Act.* In 1999, [the Legislature] enacted the Managed Health Care Insurance Accountability Act of 1999 . . . . This statute provides a nonexclusive state-law-based remedy for injuries caused

---

[14]*Smith, supra,* 93 Cal.App.4th 139, 154.
[15]*Smith, supra,* 93 Cal.App.4th 139, 157-158.

by the failure of managed care entities and health care service plans to provide medically appropriate treatment to their subscribers."[16]

In its reply brief, PacifiCare "acknowledges that under the United States Supreme Court's decision in *Rush*,[17] HMOs constitute a form of insurance."

*Rush* supports the conclusion reached in *Smith*. In *Rush*, the Supreme Court stated that an HMO "provides health care, and it does so as an insurer."[18] It went on to state that the HMO could not "checkmate common sense by trying to submerge HMOs' insurance features beneath an exclusive characterization of HMOs as providers of health care."[19]

   2.   *Section 1363.1 Is a Statute Enacted for the Purpose of Regulating the Business of Insurance*

As to the second question, *Smith* concluded that "section 1363.1 clearly purports to regulate an important aspect of [the] business [of insurance] relating to the performance and enforcement of the policy. Thus, section 1363.1 does regulate the business of insurance within the meaning of McCarran-Ferguson."[20]

In order to reach this conclusion, *Smith* first analyzed the issue under the standard announced in *SEC v. National Securities, Inc.*:[21] "Statutes aimed at protecting or regulating the relationship between insurer and insured, directly or indirectly, are laws regulating the 'business of insurance' within the meaning of that phrase as it is used in McCarran-Ferguson. (*National Securities, supra*, 393 U.S. 453, 459-460 [89 S.Ct. 564, 568-569].) As the *National Securities* court emphasized, the focus of McCarran-Ferguson is upon the relationship between the insurer and its policyholder. '*The relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation, and enforcement—these were the core of the "business of insurance.*" Undoubtedly, other activities of insurance companies relate so closely to their status as reliable insurers that they too must be placed in the same class. But whatever the exact scope of the statutory term, it is clear where the focus was—it was on the relationship between the

---

[16]*Smith, supra*, 93 Cal.App.4th 139, 158.

[17] *Rush Prudential HMO, Inc. v. Moran* (2002) 536 U.S. 355 [122 S.Ct. 2151, 153 L.Ed.2d 375] (*Rush*).

[18]*Rush, supra*, 536 U.S. 355, 367 [122 S.Ct. 2151, 2160].

[19]*Rush, supra*, 536 U.S. 355, 370 [122 S.Ct. 2151, 2161].

[20]*Smith, supra*, 93 Cal.App.4th 139, 162.

[21]*SEC v. National Securities, Inc.* (1969) 393 U.S. 453 [89 S.Ct. 564, 21 L.Ed.2d 668] (*National Securities*).

insurance company and the policyholder.' (*Id.* at p. 460 [89 S.Ct. at pp. 568-569], italics added.)"[22]

*Smith* stated that "[s]ection 1363.1 falls squarely within the standard announced in *National Securities, supra,* 393 U.S. 453. It regulates the language and terms of the policies that HMO's can offer in California, by requiring HMO's that want to use mandatory arbitration to provide certain disclosures in the documents issued to its plan enrollees. Because it defines the language that HMO's must use in their plan documents, section 1363.1 operates directly on the relationship between the HMO and its insured/enrollee. The disclosure requirement is plainly an effort to protect insureds, hence the state has exercised its power to protect or regulate the relationship between the HMO and its members. This is exactly what *National Securities* says falls within the 'core' of the business of insurance. (*National Securities, supra,* at p. 460 [89 S.Ct. at pp. 568-569]."[23]

*Smith* next analyzed the three-prong test set forth in *Union Labor Life Insurance Co. v. Pireno*[24] and reached the same conclusion. Based on previous Supreme Court decisions, the *Pireno* court established a three-prong test to determine whether a particular practice is part of the "business of insurance" exempted from the antitrust laws: "[F]irst, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry."[25] The court, however, cautioned that, "[n]one of these criteria is necessarily determinative in itself."[26]

In fact, *Smith* recognized that "[t]he Supreme Court has recently made it clear that the so-called *Pireno* factors are merely ' "*considerations* [to be] weighted" in determining whether a state law regulates insurance, [Citation], and that "[n]one of these criteria is necessarily determinative." ' (*UNUM Life Ins. Co. of America v. Ward* (1999) 526 U.S. 358, 373 [119 S.Ct. 1380, 1389, 143 L.Ed.2d 462, 476] (*Ward*).)"[27]

---

[22]*Smith, supra,* 93 Cal.App.4th 139, 154-155.
[23]*Smith, supra,* 93 Cal.App.4th 139, 159-160.
[24]*Union Labor Life Ins. Co. v. Pireno* (1982) 458 U.S. 119 [102 S.Ct. 3002, 73 L.Ed.2d 647] (*Pireno*).
[25]*Pireno, supra,* 458 U.S. 119, 129 [102 S.Ct. 3002, 3009], italics omitted.
[26]*Pireno, supra,* 458 U.S. 119, 129 [102 S.Ct. 3002, 3009].
[27]*Smith, supra,* 93 Cal.App.4th 139, 159.

Moreover, *Smith* recognized that in *Department of Treasury v. Fabe*,[28] the United States Supreme Court in *Pireno* and its predecessor "were focused on the second clause of 15 United States Code section 1012(b), which related to the narrow antitrust issue rather than the broader language of the first clause. 'The first clause commits laws "enacted . . . for the *purpose of regulating* the business of insurance" to the States, while the second clause exempts only "the business of insurance" itself *from the antitrust laws*. To equate laws "enacted . . . for the purpose of regulating the business of insurance" with the "business of insurance" itself, . . . would be to read words out of the statute.' (*Fabe, supra,* at p. 504 [113 S.Ct. at pp. 2209-2210], italics added.)"[29] Hence, it is unclear whether the *Pireno* three-prong test applies in this context. PacifiCare contends that it does.

We need not determine whether the test applies because, as the *Smith* court stated: "Even accepting the contention, however, that the issue should be decided by application of the *Pireno* factors, we believe that the facts and circumstances presented here demonstrate that those criteria . . . are in fact sufficiently met."[30]

As to the first prong, "[i]t is true that section 1363.1 does not transfer risk." However, "*Ward* makes it clear that even if the *Pireno* test is applied, *not all three parts must be met*."[31]

As to the second prong, *Smith* stated that "because section 1363.1 directly regulates the words that PacifiCare may use in its plan if it wants to include an enforceable arbitration clause, it regulates an integral part of the policy relationship. This relates directly to the *performance and enforcement* of the policy, a factor of critical importance under *Fabe*."[32]

As to the third prong, *Smith* stated that "HMO's *are* engaged in the business of insurance when they offer health coverage to their members, and section 1363.1 clearly regulates this aspect of their endeavor"[33]

"Ultimately, therefore, even if the *Pireno* test is to be applied, section 1363.1 meets that test as clarified and applied in *Ward*. Finally, as a simple matter of common sense, by conditioning the availability of arbitration in

[28]*Department of Treasury v. Fabe* (1993) 508 U.S. 491 [113 S.Ct. 2202, 124 L.Ed.2d 449] (*Fabe*).
[29]*Smith, supra,* 93 Cal.App.4th 139, 157.
[30]*Smith, supra,* 93 Cal.App.4th 139, 161.
[31]*Smith, supra,* 93 Cal.App.4th 139, 161.
[32]*Smith, supra,* 93 Cal.App.4th 139, 161.
[33]*Smith, supra,* 93 Cal.App.4th 139, 162.

HMO subscriber contracts on the HMO's compliance with the mandated disclosures, section 1363.1 regulates insurance."[34]

We agree with the thorough reasoning set forth in *Smith* and also conclude as follows: "[W]e conclude that PacifiCare is engaged in the business of insurance and section 1363.1 clearly purports to regulate an important aspect of that business relating to the performance and enforcement of the policy. Thus, section 1363.1 does regulate the business of insurance within the meaning of McCarran-Ferguson. Therefore, the FAA, a federal statute of general application, which does not 'specifically relate' to insurance, is foreclosed from application to prevent the operation of section 1363.1."[35]

## II. *The Trial Court Properly Denied PacifiCare's Petition to Compel Arbitration Because the Arbitration Provisions Failed to Comply with Section 1363.1*

The second issue on appeal is whether the arbitration provisions in this case comply with section 1363.1. PacifiCare contends that "it is clear that the arbitration provisions meet the statutory requirements." After reviewing the record, we disagree.

Section 1363.1 provides as follows:

"Any health care service plan that includes terms that require binding arbitration to settle disputes and that restrict, or provide for a waiver of, the right to a jury trial shall include, in clear and understandable language, a disclosure that meets all of the following conditions:

"(a) The disclosure shall clearly state whether the plan uses binding arbitration to settle disputes, including specifically whether the plan uses binding arbitration to settle claims of medical malpractice.

"(b) The disclosure shall appear as a separate article in the agreement issued to the employer group or individual subscriber and shall be prominently displayed on the enrollment form signed by each subscriber or enrollee.

"(c) The disclosure shall clearly state whether the subscriber or enrollee is waiving his or her right to a jury trial for medical malpractice, other disputes relating to the delivery of service under the plan, or both, and shall be substantially expressed in the wording provided in subdivision (a) of Section 1295 of the Code of Civil Procedure.

[34]*Smith, supra,* 93 Cal.App.4th 139, 162.
[35]*Smith, supra,* 93 Cal.App.4th 139, 162.

"(d) In any contract or enrollment agreement for a health care service plan, the disclosure required by this section shall be displayed immediately before the signature line provided for the representative of the group contracting with a health care service plan and immediately before the signature line provided for the individual enrolling in the health care service plan."

Here, plaintiff contends that PacifiCare's documents failed to meet the requirements of section 1363.1 for three reasons: (1) The documents violate section 1363.1, subdivision (b), because the arbitration disclosure was not stated in a separate article or prominently displayed in the enrollment form; (2) the enrollment form violated section 1363.1, subdivision (c), because the disclosure was not substantially expressed in the wording provided in section 1295, subdivision (a) of the Code of Civil Procedure; and (3) the enrollment form failed to comply with section 1363.1, subdivision (d), because the disclosure was not immediately before the member signature line.

We need not address all the arguments presented by plaintiff because we find that the arbitration disclosure failed to comply with section 1363.1, subdivision (b).

Section 1363.1, subdivision (b) requires that the disclosure "shall be *prominently* displayed on the enrollment form signed by each subscriber or enrollee." (Italics added.)

In this case, an exemplar of PacifiCare's benefits enrollment form was provided in the record. Near the end of the enrollment form, the following paragraph appears:

"I hereby authorize my physician, health care practitioner, hospital, clinic, or other medical or medically related facility to furnish any and all records . . . for purposes of review, investigation or evaluation of an application or claim. I also authorize disclosure to a hospital or health care plan, employer, self-insurer or insurer any such medical information obtained if such disclosure is necessary to allow the processing of any claims or for purposes of utilization review or financial audit. This authorization shall become effective immediately and shall remain in effect as long as it is necessary to enable claims processing. PacifiCare Health Plan and Kaiser Foundation Health Plan: I agree to abide by the rules of binding arbitration as described in the Evidence of Disclosure brochure. PacifiCare: I understand that any dispute or controversy which may arise under the Agreement between myself (and/or any enrolled family member) and Health Maintenance Network of Southern California or any Participating Medical Office must be submitted to Binding Arbitration in lieu of a jury or court trial. [¶] I

authorize deductions to be made from my salary to cover my share of the cost of enrollment as it is now or as it may be in the future. I also certify that the names of the persons listed in the Medicare Section above are enrolled in both parts A and B of Medicare."

PacifiCare argues that because (1) the arbitration disclosure is just above the signature line, (2) "[i]ts typeface is no smaller than the majority of text used on the page and is not appreciably smaller than the few headings on the page," and (3) it is "neither hidden or buried," section 1363.1, subdivision (b) is satisfied. We disagree.

"Prominent" is defined as "standing out or projecting beyond a surface or line," or "readily noticeable."[36] Here, the disclosure sentence was written in the middle of the authorization for the release of medical records and an authorization for payroll deduction of premiums. The disclosure was in the same font as the rest of the paragraph, and was not bolded, underlined or italicized. The disclosure sentence neither stood out nor was readily noticeable. We simply fail to see how this disclosure can be deemed as being "prominently displayed." Because the arbitration disclosure fails to comply with section 1363.1, subdivision (b), we hold that the trial court properly denied PacifiCare's petition to compel arbitration.

DISPOSITION

The trial court's order denying PacifiCare's petition to compel arbitration is affirmed.

McKinster, Acting P. J., and Richli, J., concurred.

---

[36]Webster's Ninth New Collegiate Dictionary (1991) page 941.