83 P.3d 731

**Veronica Anne STALLARD, As Trustee of the Veronica Anne Stallard Trust dated March 3, 1994, Plaintiff–Appellant,**

v.

**CONSOLIDATED MAUI, INC., a Hawai'i Corporation, and Association of Apartment Owners of Maui Isana Resort, a Hawai'i Non-profit Corporation, Defendants–Appellees,**

and

**John Does 1–10; Jane Does 1–10, Doe Corporations 1–10, and Doe Governmental Entities 1–10, Defendants.**

No. 22603.

Supreme Court of Hawai'i.

Feb. 6, 2004.

Reconsideration Denied Feb. 26, 2004.

Dennis Niles, William M. McKeon and Carla M. Nakata (Paul, Johnson, Park & Niles), Wailuku, on the briefs, for plaintiff-appellant.

Philip J. Leas and Theodore D.C. Young (Cades Schutte Fleming & Wright), Honolu-

lu, on the briefs, for defendant-appellee Consolidated Maui, Inc.

Larry C.Y. Lee, Honolulu, and Glen M. Kosaka, on the briefs, for defendant-appellee Association of Apartment Owners of Maui Isana Resort.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by ACOBA, J.

We hold that, because Hawai'i Revised Statutes (HRS) § 514E–6 (1993), relating to time sharing,[1] applies to a project that is not a hotel and Maui County Code (MCC) § 19.37.010C pertains to time sharing in a hotel district, the aforesaid MCC section does not cover the same subject matter or conflict with HRS § 514E–6. Thus, MCC § 19.37.010C is not preempted by HRS § 514E–6. Whereas there was no genuine issue of material fact as to whether the Maui Isana Resort (Resort) was a hotel, the authorization of time sharing pursuant to MCC § 19.37.010C must be "explicit and prominent." However, the authorization in amendments to the project documents, although "explicit," was not "prominent"; hence the second circuit court (the court)[2] incorrectly ruled that a time share plan was permitted at the Resort. Accordingly, we vacate the June 2, 1999 final judgment and remand: (1) with instructions to enter an order granting the April 2, 1998 motion for partial summary judgment filed by Plaintiff–Appellant Veronica Anne Stallard (Plaintiff), in part, as to the applicability of MCC § 19.37.010C and the lack of proper authorization of time sharing; and (2) for proceedings consistent with this

---

1. According to HRS § 514E–1,
 "time share plan" means any plan or program in which the use, occupancy, or possession of one or more time share units circulates among various persons for less than a sixty-day period in any year, for any occupant. The term time share plan shall include both time share ownership plans and time share plans as follows:
 (1) "Time share ownership plan" means any arrangement whether by tenancy in common, sale, deed or by other means, whereby the purchaser receives an ownership interest and the right to use the property for a specific or discernible period by temporal division.

 (2) "Time share use plan" means any arrangement, excluding normal hotel operations, whether by membership agreement, lease, rental agreement, license, use agreement, security or other means, whereby the purchaser receives a right to use accommodations or facilities, or both, in a time share unit for a specific or discernible period by temporal division, but does not receive an ownership interest.

2. The Honorable Artemio Baxa presided.

decision and to determine the appropriate remedies herein.

## I.

In 1988, Marine Planning International, Inc. (MPI) developed and built the Resort. Haruo Kurokawa was MPI's president at that time. The Resort consisted of fifty apartments and three commercial units. Paragraph J of the 1988 Resort Declaration[3] stated in relevant part as follows:

The Residential Apartments shall be occupied and used only as private dwellings by the respective owners thereof, their tenants, families, domestic servants and social guests and may be utilized for long-term or *transient rentals, including vacation rental, but specifically excluding time-sharing plans.*

(Emphasis added.) Amendment of the Declaration requires the affirmative vote of the owners of 75% of the interests in the common elements, and is effective "only upon the recording of an instrument setting forth such amendment and vote duly executed by such owners or by any two (2) officers of the association[.]"

In March 1991, the range of allowable apartment uses was enlarged through a second amendment of the Declaration.[4] This amendment to paragraph J of the Declaration was approved by a vote of 94% of the interests in the common elements,[5] and deleted the prohibition against time sharing in the

original version of the paragraph. As amended, paragraph J stated:

The Residential Apartments shall be occupied and used for any purpose or use permitted under the zoning code of the County of Maui, including but *not limited to resort hotel use, vacation rentals and long term or transient rentals* by the respective owners thereof, their tenants, families, domestic servants and social guest.

(Emphasis added.)

In November 1994, Plaintiff purchased apartment no. C–501 at the Resort. Plaintiff was a full-time resident of the Resort.

Beginning in late 1996, Defendant–Appellee Consolidated Maui, Inc. (CMI) began buying units in the Resort. CMI eventually purchased forty-seven of the fifty units.

On January 21, 1997, CMI applied to the state time share administrator[6] for approval of a time share plan to be instituted at the Resort, named the "Maui Beach Vacation Club." On June 2, 1997, a third amendment was signed by Michael Kaplan, president of the board of directors of Defendant–Appellee Association of Apartment Owners of Maui Isana Resort (AOAO) and president of CMI, and recorded on June 6, 1997. The third amendment read:

*The Residential Apartments* shall be occupied and used for any purpose or use permitted under the zoning code of the

---

3. According to *Black's Law Dictionary* 407 (6th ed.1990), a declaration is "[a] document by the owner of property which is recorded in order to establish a legal order upon the property, such as a condominium (by a declaration of condominium or master deed)[.]" Specifically, HRS § 514A–1 (1993) defines declaration as "the instrument by which the property is submitted to this chapter [HRS chapter 514A entitled Condominium Property Regimes], as hereinafter provided, and such declaration as from time to time amended."

4. The first amendment to the Declaration did not affect apartment use.

5. Paragraph S of the Declaration allowed for amendments of the Declaration, stating that,

[e]xcept as otherwise provided herein or in said Condominium Property Act, this *Declaration may be amended by a vote of the owners of seventy-five percent (75%) of the interests in the*

common elements effective only upon the recording of an instrument setting forth such amendment and vote duly executed by such owners *or by any two (2) officers of the Association* [.]
(Emphases added.)

6. According to HRS § 514E–1.5 (1993),

[t]he director [of the Department of Commerce and Consumer Affairs] shall appoint a time share administrator, who shall not be subject to chapter 76 [Civil Service Law] and 77 [Compensation Law], to administer this chapter. The administrator shall be responsible for the performance of the duties conferred upon the director by this chapter [HRS § 514E–10].
The Director's duties include accepting for registration the developer's time share plan and approving acquisition agents and sales agents pursuant to the conditions set out in HRS § 514E–10 (1993).

County of Maui, including but not limited to resort hotel use, vacation rentals and long term or transient rentals by the respective owners thereof, their tenants, families, domestic servants and social guests, *and specifically including time sharing purposes* pursuant to a "time share plan" as defined in, and established in accordance with the requirements of Chapter 514E of the Hawai'i Revised Statutes, as amended.

(Emphases added.) The execution and recordation of the third amendment was not preceded by a separate vote of the apartment owners.

On July 2, 1997, the time share administrator approved the time share plan.

In July 1997, Plaintiff sued both CMI and the AOAO [CMI and the AOAO are hereinafter collectively referred to as "Defendants"], alleging that the planned conversion of the Resort into a time share property was illegal. Plaintiff claimed *inter alia* that the conversion violated HRS § 514E–6(b)[7] or, alternatively, MCC § 19.37.010C,[8] because the condominium project's Declaration did not "explicitly and prominently" authorize the conversion of the Resort into a time share property and the third amendment was improperly enacted.

7. HRS § 514E–6(b) states that

> *[i]f the project* [property subject to project instruments, including but not limited to condominiums, HRS § 514E–1] in which the time share unit or time share plan is to be created *is not a hotel* and does not contain time share units or a time share plan, *then such use may be created only if such use is explicitly and prominently authorized by the project instruments, or the project instruments are amended by unanimous vote of the unit owners to explicitly and prominently authorize time sharing.* (Emphases added.)

8. MCC § 19.37.010C states in relevant part that "*[t]ime share units,* time share plans and transient vacation rentals *are allowed in the hotel district; provided, such use is explicitly and prominently authorized by the project instrument* ... including any amendments to the documents[.]" (Emphases added.)

9. Count I of the amended complaint requested declaratory relief against the AOAO, alleging that: (1) the third amendment does not reflect the actions of the AOAO at its March 20, 1991 meeting [meeting at which second amendment

In April 1998, the AOAO voted to amend its Bylaws to authorize time sharing.

In June 1998, the AOAO approved a fourth amendment to the Declaration. The Declaration stated that "the Association hereby ratifies the Third Amendment in all respects and confirms that Paragraph J of the Declaration was and is hereby amended."

The AOAO moved for summary judgment on October 22, 1998, in which CMI joined on October 26, 1998. The court filed a January 15, 1999 order granting the motion in favor of the AOAO and against Plaintiff as to Count I[9] of the August 14, 1997 amended complaint and in favor of CMI and against Plaintiff as to Counts II,[10] III,[11] and IV[12] of the August 14, 1997 amended complaint. The court did not make any findings of fact or conclusions of law.

However, according to the transcript of the summary judgment hearing, the court's ruling was based on the conclusions (1) that HRS § 514E–6(b) preempted the MCC, (2) that the Resort was a "hotel," and (3) that therefore the Resort was exempt from the requirement in HRS § 514E–6(b) that the Declaration "explicitly and prominently" authorize the conversion of a condominium project into a time share property. On April 2,

was voted on], (2) the amendment was filed more than six years after the meeting and three years after Plaintiff took title to Apartment C–501, and (3) the third amendment was untimely and constitutes an unlawful encumbrance upon Plaintiff's title.

10. Count II of the amended complaint requested declaratory relief against CMI, alleging that the second amendment only allows certain uses under the zoning code which are required by MCC § 19.37.010C to be "explicitly and prominently authorized by the project instrument."

11. Count III of the amended complaint requested declaratory relief against CMI, alleging that HRS § 514E–6 provides that where a condominium project is not a hotel, then time sharing may only be created if such use is "explicitly and prominently authorized by the project instruments" or by unanimous vote.

12. Count IV of the amended complaint requested injunctive relief against CMI, alleging that CMI has deliberately and intentionally breached the restrictive covenant, paragraph J of the 1988 Declaration, affecting the Resort.

1998, Plaintiff also moved for partial summary judgment. Plaintiff argued that: (1) the third amendment to the declaration was ineffective for purposes of authorizing time sharing because it lacked a unanimous vote as required under HRS § 514E–6(b); (2) in the alternative, the project instruments did not "explicitly and prominently" authorize time sharing, violating MCC 19.37.010C; and (3) as such, the AOAO and CMI breached the restrictive use covenant [13] in the initial declaration. Plaintiff requested relief in the form of (1) a declaration, (2) a declaratory judgment, and (3) injunctive relief.[14] The court denied this motion in a January 15, 1999 order. Final judgment was entered on June 2, 1999.

Plaintiff, as trustee of the Veronica Anne Stallard Trust, appeals from the June 2, 1999 final judgment (1) granting judgment in favor of the AOAO as to Count I of Plaintiff's amended complaint based on the AOAO's October 22, 1998 motion for summary judgment and (2) granting judgment in favor of CMI as to Counts II, III, and IV of Plaintiff's amended complaint based on CMI's October 26, 1998 joinder in the AOAO's motion for summary judgment.[15]

## II.

On appeal, Plaintiff argues that: (1) the court was wrong in concluding that HRS § 514E–6 preempts MCC § 19.37.010C, and therefore erred in denying, on that basis, Plaintiff's motion for partial summary judgment; and (2) the court erred in granting summary judgment in favor of AOAO and CMI because (a) questions of fact precluded the court from concluding that the Resort was a hotel as a matter of law; (b) the court improperly considered evidence proffered by

Defendants which violated Hawai'i Rules of Civil Procedure (HRCP) Rule 56(e); (c) if the Resort was not a hotel, HRS § 514E–6(b) required that time sharing use be explicitly and prominently authorized by condominium declaration; (d) MCC § 19.37.010C required that time share use be explicitly and prominently authorized by the condominium declaration irrespective of whether the project was a hotel, and was not preempted by statute; (e) the original Declaration prohibited time sharing at the Resort, and neither the first nor the second amendment to the Declaration provided explicit and prominent authorization for such use; (f) the third amendment to the Declaration, recorded over six years after the meeting of owners it purportedly relied upon, was null and void; and (g) subsequent amendments to the Declaration and Bylaws, which post-dated CMI's time share application, failed to cure the defect.

## III.

"[A]n order of summary judgment is reviewed under the same standard applied by the circuit courts." *Hiner v. Hoffman,* 90 Hawai'i 188, 190, 977 P.2d 878, 880 (1999); *see also Hawai'i Cmty. Fed. Credit Union v. Keka,* 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000) (reiterating that circuit court's grant or denial of summary judgment is reviewed *de novo* ). Thus, the moving party must demonstrate that there are no genuine issues of material fact. *Hiner,* 90 Hawai'i at 190, 977 P.2d at 880. Consequently, "summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

---

13. Plaintiff asserts that the statement "specifically excluding time sharing" in paragraph J of the 1988 Declaration was a restrictive covenant.

14. Plaintiff requested:
(A) A declaration that the Third Amendment is invalid and constitutes an unlawful encumbrance upon Plaintiff's title and ordering it be stricken from the Bureau of Conveyances; (B) A declaratory judgment that Defendant Consolidated's use of the residential apartments it owns as time share units or subject to a time share plan is unlawful because the project in-

strument does not "explicitly and prominently" authorize such use; and (C) A preliminary injunction prohibiting Defendant Consolidated from using any of its residential units as time share units, or from filing, attempting to file or implementing any time share plan under H.R.S. Chapter 514E at the Maui Isana.

15. Count V of Plaintiff's amended complaint was dismissed without prejudice based on a Stipulation for Dismissal and order filed on March 3, 1999.

any material fact and the moving party is entitled to judgment as a matter of law." *Id.*

## IV.

In her memorandum and supplemental memorandum in opposition to Defendants' motion for summary judgment, Plaintiff argued that HRS § 514E–6(b) does not preempt MCC § 19.37.010C. Hawai'i State Constitution Article VIII provides, *inter alia,* that it authorizes the legislature to "create counties" (Section 1) and that the counties are empowered "to frame and adopt a charter[ ]" (Section 2). *See Richardson v. City & County of Honolulu,* 76 Hawai'i 46, 65 n. 26, 868 P.2d 1193, 1212 n. 26 (1994). However, Article VIII section 6 states that "[t]his article shall not limit the power of the legislature to enact laws of statewide concern." In conjunction with section 6, HRS § 50–15 (1993) relating to powers reserved to the state, provides that

> [n]otwithstanding the provisions of this chapter, there is expressly reserved to the state legislature the power to enact all laws of general application throughout the State on matters of concern and interest and laws relating to the fiscal powers of the counties, and neither a charter nor ordinances adopted under a charter shall be in conflict therewith.

Article VIII section 6 and its implementing statute, HRS § 50–15, are the state supremacy provisions. *See Richardson,* 76 Hawai'i at 66, 868 P.2d at 1213. Ordinances in violation of these provisions thus are invalid. HRS § 46–1.5(13) (1993), relating to the general powers and limitations of the counties, provides that each county has the power to enact ordinances "*not inconsistent with, or tending to defeat, the intent of any state statute,* provided also that the ordinance does not disclose or express an implied intent that the ordinance shall be exclusive or uniform throughout the State." (Emphasis added.)

Construing HRS § 46–1.5(13), this court in *Richardson* stated that "a municipal ordinance may be preempted pursuant to HRS § 46–1.5(13) if (1) it covers the same subject matter embraced within a comprehensive state statutory scheme disclosing an express or implied intent to be exclusive and uniform throughout the state or (2) it conflicts with state law." 76 Hawai'i at 62, 868 P.2d at 1209. *See also Save Sunset Beach Coalition v. City & County of Honolulu,* 102 Hawai'i 465, 481, 78 P.3d 1, 17 (2003) (clarifying that the state districting scheme prevails over city land use ordinances); *Gatri v. Blane,* 88 Hawai'i 108, 115, 962 P.2d 367, 374 (1998) (holding that because the development plan had the force and effect of law the proposed development must be "consistent with *both* the general plan and the zoning" (emphasis in original)); *Pac. Int'l Servs. v. Hurip,* 76 Hawai'i 209, 218, 873 P.2d 88, 97 (1994) (explaining that the Hawai'i No–Fault law was not intended to be an exclusive statutory treatment of automobile liability insurance, therefore municipal ordinance governing car rental insurance coverage was not preempted).

## V.

■ Assuming *arguendo* chapter 514 enacted a comprehensive statutory scheme,[16] MCC § 19.37.010C does not cover the same subject matter as HRS § 514E–6(b). By its plain language, HRS § 514E–6(b) applies to a project[17] that is not a hotel. Hence, HRS § 514E–6(b) does not cover the requirements for authorizing time sharing where a project is a hotel. Contrastingly, MCC § 19.373.010C, on its face, governs authorization of time sharing in a hotel district.[18] A

---

16. The purpose of chapter 514E is to provide "strict government regulation" and "careful regulatory oversight" of time sharing. Sen. Conf. Comm. Rep. No. 8–80, in 1980 Senate Journal, at 942. However, the legislature intended, under HRS § 514E–5, that "time sharing and transient vacation rentals are allowed where designated for hotel use ... pursuant to county authority under Section 46–4, Hawai'i Revised Statues, or where the county, by its legislative process, designates hotel ... use." *Id.*

17. HRS § 514E–1 (1993) states that "project" means "property that is subject to project instruments, including but not limited to condominiums and cooperative housing corporations."

18. According to HRS § 514E–4 (1993), the counties are permitted to determine where time sharing units are to be located. The legislature "elected not to prejudge where in an appropriate area time sharing and transient vacation rentals should be allowed or prohibited, but to leave that

hotel district is regulated by MCC § 19.14 and a hotel is a permitted use in a hotel district. MCC § 19.14.020B. Inasmuch as MCC § 19.37.010C applies only to hotels, that ordinance does not relate to authorization in projects that are not hotels. Hence, MCC § 19.37.010C does not cover the same subject matter as HRS § 514E–6(b). For similar reasons, MCC 19.37.010C does not conflict with HRS § 514E–6(b). As stated previously, MCC § 19.37.010C governs time share units and plans in a hotel district and thus, hotels in such districts. On the other hand, HRS § 514E–6(b) governs time sharing in a project that is not a hotel. Therefore, MCC § 19.37.010C relates to a situation not covered or conflicting with HRS § 514E–6(b). *See Richardson,* 76 Hawai'i at 62–63, 868 P.2d at 1209–10 (explaining that lease-to-fee property statutes may be comprehensive but not uniform because the statutes control the "mechanics of the taking process" while the ordinances address the specific rights of the lessees and manner of fee acquisition). Consequently, MCC § 19.37.010C is not preempted by HRS § 514E–6(b).

### VI.

HRS § 514E–6(b) applies to authorization of time sharing if the Resort is not a hotel and MCC § 19.37.010C applies to authorization of timesharing if it is a hotel. HRS § 514E–6 states that "[t]he foregoing [HRS §§ 514E–6(a), (b), and (c) relating to time sharing] shall not limit the individual counties in zoning for or *defining hotels.*" (Em-

decision to each county as a *logical part of zoning or designation functions."* Sen. Conf. Comm. Rep. No. 8–80, in 1980 Senate Journal, at 942 (emphasis added). "The legislature intend[ed] by this Act that the counties will be guided by the notion that time sharing and transient vacation rentals should not be permitted where the life styles of the permanent residents will be disrupted in an unreasonable manner." *Id.* Therefore, it was the intent of the legislature "that time sharing and transient vacation rental use are identical uses of land … [, therefore] time sharing and transient vacation rentals should be either permitted or prohibited on an equal basis within an area deemed appropriate by the county." *Id.*

19. Maui County Code, Ordinance 2031 (Sept. 4, 1991) amended Title 19 of the Maui County Code relating to general provisions and definitions.

phasis added.) Therefore, by the plain language of the statute, the legislature granted the counties the authority to define "hotel" for time share zoning purposes. Because the counties were granted the power to zone for hotel districts, the definition of "hotel" in the Maui zoning code is applicable. *See* HRS § 514E–4. On September 4, 1991, the Maui zoning code was amended,[19] and defined hotel as "a transient vacation rental, other than a bed and breakfast home containing lodging or dwelling units." MCC § 19.04.040.[20] This definition was in effect at the time Plaintiff purchased her unit.

The Resort's original Declaration allowed the use of the property for "long-term or transient rentals, including vacation rentals." Under the definition of MCC § 19.04.040, transient vacation rentals constitute hotels. Defendants submitted evidence that the Resort was used as a hotel. In a declaration, Kurokawa, President of the development company of the Resort from 1987 until the time of his December 2, 1998 declaration, stated that "from its construction in 1988 through at least March 1991, the Maui Isana apartments were used as transient vacation rentals and for short stays by the owners." He also stated that "transient vacation rentals were authorized in the Maui Isana since its inception." Kurokawa attested that MPI "purchased the project and secured an amended Special Management Area Permit from Maui County to permit use of the project for hotel purposes." As to Plaintiff's unit, Kurokawa explained that "unit C–

20. Although the AOAO argues that the definition of hotel in *County of Maui v. Puamana,* 2 Haw. App. 352, 357, 631 P.2d 1215, 1219 (1981) applies, we do not believe it is applicable. First, the Maui zoning code, as interpreted by the Intermediate Court of Appeals in *Puamana,* is different from the one applicable here. Moreover, in *Puamana,* the court was concerned with whether the business was operated as a hotel, in violation of a zoning statute. Here, we are concerned not with the operation of a hotel but, rather, whether the business was a hotel. Although operational aspects may inform the definition of the term "hotel," such aspects are not conclusive.

501 of the Maui Isana was sold in 1989 to Ms. Mitsuko Ogawa, a Japanese investor, who used the unit as an investment and had the unit in a rental pool operated by Marine Planning for transient vacation rentals."

Additionally, Christopher L. Hart, the Maui Planning Director, stated in his declaration that "hotel use is permitted only in the Hotel District[,]" and the Resort was "issued an SMA [Special Management Area] Permit as a hotel."

Plaintiff argues there was no intention that the Resort become a hotel because the September 9, 1988 Final Condominium Public Report states that the Resort was not to be a hotel. She maintains that the report represented that "no program at this time, nor is any program planned or contemplated, to offer a rental service of any kind to the owners of condominium apartments, either individually or in any form of pooling arrangements." However, the public report notifies potential buyers that the AOAO will ultimately control the management of the project. The report explains that "[u]ntil there is a sufficient number of purchasers of apartments to elect a majority of the Board of Directors, it is likely that the developer will effectively control the affairs of the Association." Moreover, the report itself stated that the report would expire on October 9, 1989. *See* HRS § 514A–43 (1985) (instructing that a public report expires within "thirteen months after the date of issuance"). Therefore, upon termination of the public report, the Declaration of the Resort was subject to amendment by appropriate vote. *See supra* note 5. As mentioned previously, paragraph J of the initial Declaration allowed for "transient vacation rental, including vacation rental[.]" Based on the definition of hotel in MCC § 19.04.040 as "a transient vacation rental, other than a bed and breakfast home containing lodging or dwelling

units," paragraph J of the 1988 Declaration and the 1991 amendment of that paragraph, *see supra,* providing for "transient vacation rentals," and the declarations of Kurokawa and Hart, no genuine issue of material fact existed that the Resort was a hotel as defined by the MCC.

### VII.

Plaintiff argues that the declarations of Kurokawa and Hart were inadmissible under HRCP Rule 56(e).[21] HRCP Rule 56(e) states in relevant part that "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters states herein." The declarations[22] of Kurokawa and Hart complied with HRCP Rule 56(e).

"In instances where Hawai'i case law and statutes are silent, this court can look to parallel federal law for guidance." *Gold v. Harrison,* 88 Hawai'i 94, 104, 962 P.2d 353, 363 (1998) (quoting *State v. Ontai,* 84 Hawai'i 56, 61, 929 P.2d 69, 74 (1996)). As the Federal Rules of Civil Procedure are substantially similar to the HRCP, we look to federal case law for guidance. The Ninth Circuit has indicated that the Rule 56(e) requirement of personal knowledge and competence to testify may be inferred from the affidavits themselves. *See Barthelemy v. Air Lines Pilots Ass'n,* 897 F.2d 999, 1018 (9th Cir. 1990) (holding that it was proper for court to rely on affidavits of defendant's representatives in negotiations because their "personal knowledge and competence to testify are reasonably inferred from their positions and the nature of their participation in the matters to which they swore"); *Lockwood v. Wolf Corp.,* 629 F.2d 603, 611 (9th Cir.1980) (holding that because attorney negotiated and handled legal transactions, it was "reasonable to as-

**21.** Both the AOAO and CMI argue that Plaintiff did not raise the issue of admissibility of affidavits below, therefore she is barred from raising the issue on appeal. Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(4). However, Plaintiff asserts that she did not waive the objections to admissibility of evidence under HRAP Rule 56 because she specifically stated her objections on the record.

**22.** According to Rules of the Circuit Courts of the State of Hawai'i Rule 7(g), "[i]n lieu of an affidavit, an unsworn declaration may be made by a person, in writing, subscribed as true under penalty of law." As the appellate court reviews the trial court's grant or denial of summary judgment *de novo,* this court may consider the declarations. *see Keka,* 94 Hawai'i at 221, 11 P.3d at 9.

sume that he had personal knowledge of nonpayment).

■ Consequently, Kurokawa and Hart could attest to facts as to which it could be reasonably inferred they would have personal knowledge as a result of their "positions and the nature of their participation[.]" *Barthelemy,* 897 F.2d at 1018. Kurokawa stated that he had "been President of Marine Planning International, Inc. the developer of the Maui Isana Resort from 1987 to the present" (declaration signed December 2, 1998). He made the declaration "from personal knowledge." As the president of the development company, it may be reasonably inferred that he had personal knowledge of the operation of the Resort. Hart stated that he "was the Deputy Planning Director of the County of Maui from 1980 to 1984." He also stated that he was "Planning Director from 1986 to 1991." Thus, from his position as Deputy Planning Director and Planning Director of the County of Maui, it may reasonably be inferred that Hart had personal knowledge of the policy with respect to hotel districts. Therefore, the facts in the declarations of Kurokawa and Hart did not violate HRCP Rule 56(e).

## VIII.

Because the Resort was a hotel, HRS § 514E–6(b) does not apply. Whereas the Resort was located within a hotel district, MCC § 19.37.010C applies. MCC § 19.37.010C requires that time sharing must be "explicitly and prominently authorized by the project instruments." The Maui County Code does not provide a definition of "explicitly" or "prominently." "The words of a law are generally to be understood in their most known and usual signification, without attending so much to the literal and strictly grammatical construction of the words as to their general or popular use or meaning." HRS § 1–14 (1993); *see also Sunset Beach,* 102 Hawai'i at 479, 78 P.3d at 15 (explaining that the definition of "guideline" within a zoning ordinance is found in the "plain and ordinary meaning of the term"). "Explicitly" means "in an explicit manner." *Webster's Third Int'l Dictionary* 801 (1961) [hereinafter *Webster's Third* ]. "Explicit" is defined

as "characterized by full clear expression: being without vagueness or ambiguity: leaving nothing implied[.]" *Id.* "Prominently" means "in a prominent manner." *Id.* at 1815. "Prominent" is defined as "distinctly manifest to the senses: readily noticeable[.]" *Id.* Similarly, "prominent" also means "standing out or projecting beyond a surface or line." *Webster's 9th New Collegiate Dictionary* 941 (1991).

■ As previously stated, the second amendment was enacted by a 94% vote of the interest in the common elements. It became effective upon its recordation on June 14, 1991. This amendment deleted the prohibition against time sharing. There was no explicit authorization of time sharing in the Declaration because there was no provision authorizing it, but simply an absence of any reference to time sharing. Obviously, without a reference to time sharing, the imposition of such use was not "distinctly manifest to the senses." *Webster's Third* at 1815. Consequently, the second amendment to the Declaration did not comply with the requirements of MCC § 19.37.010C.

■ The third amendment signed by Kaplan on January 21, 1997 and recorded on June 6, 1997 added to paragraph J a provision which stated that "[t]he Residential Apartments shall be occupied and used for any purpose or use permitted under the zoning code . . . specifically including time sharing purposes." Plaintiff argues that this amendment is invalid because "Kaplan lacked the authority to 'further amend' the declaration through a 'clarification' of the Second Amendment." The third amendment was not effective because it was not voted on as required by the Declaration. Paragraph S of the Declaration authorizes amendment of the Declaration if voted on and passed by a 75% favorable vote. The amendment is "effective only upon the recording of an instrument setting forth such amendment and vote duly executed by such owners." No vote was taken on the third amendment, therefore it was ineffective.

■ In any event, although explicit, the third amendment language was not prominent. In *Imbler v. PacifiCare of California,*

*Inc.*, 103 Cal.App.4th 567, 126 Cal.Rptr.2d 715, 724 (2002), the California Court of Appeals for the Fourth District held that an arbitration disclosure was not "prominently displayed on the enrollment form" as required by California statute. The appellate court relied on the dictionary definition of "prominent" as "standing out or projecting beyond a surface or line, or readily noticeable." *Id.* (internal quotation marks omitted). Based on this definition the appellate court explained that "the disclosure sentence was written in the middle of the authorization for the release of medical records and an authorization for payroll deduction of premiums. The disclosure was in the same font as the rest of the paragraph, and was not bolded, underlined or italicized." *Id.* Consequently, the court ultimately held that the "disclosure sentence neither stood out nor was readily noticeable." *Id.* Similarly, the authorization for time sharing in paragraph J of the Declaration was of the same font as the other provisions and was not bolded, underlined or italicized. As a result, it was not "distinctly manifest to the senses[,]" *Webster's Third* at 1815, and did not comply with MCC § 10.37.010C.

 The fourth amendment to the Declaration stated that "the Association hereby ratifies the Third Amendment in all respects and confirms that Paragraph J of the Declaration was and is hereby amended[ ]" and set forth the time sharing language contained in the third amendment. It is not clear from the record whether a vote was held. In quoting the third amendment, the fourth amendment explicitly referred to time sharing. Again, however, the language was not readily noticeable and, thus, not prominent. *Cf. Reefshare, Ltd., v. Nagata*, 70 Haw. 93, 101, 762 P.2d 169, 174 (1988) (holding that the requirement of "explicitly and prominently" was "intended by the legislature to ensure that the declaration give unequivocal

notice to the project unit owners of the authorization for such use").

As noted previously, the AOAO had voted to amend its Bylaws to authorize time sharing.[23] As previously stated, MCC § 19.37.010C authorizes time sharing in the hotel district provided that such use is "explicitly and prominently authorized by the project instruments." "Project instruments" is defined as "one or more documents, including any amendments to the documents, by whatever name denominated, containing restrictions or covenants regulating the use or occupancy of a project." MCC § 19.37.010C. Consequently, time sharing was unauthorized at the resort because the authorization allowing time sharing was not "prominently" displayed in the project instruments. Therefore, the Bylaws to the Resort are considered "project instruments" within the meaning of MCC § 19.37.010C. However, like the amendments to the Declaration, the time share language of the amendment to the Bylaws, while "explicit," was not "prominent." Therefore, the amendment to the Bylaws does not comply with the requirements of MCC § 19.37.010C.

We note that although Plaintiff argued in her motion for partial summary judgment that CMI violated the restrictive covenant that prohibited time sharing, in the initial version of the Declaration the covenant was properly removed by the second amendment. *See supra* pages 470, 476, 83 P.3d pages 733, 739. Hence, although CMI violated MCC § 19.37.010C by failing to properly authorize time sharing, it could not have violated a covenant which was properly omitted from the Declaration.

## IX.

For the reasons stated, the court's June 2, 1999 final judgment is vacated and the case

---

**23.** The amendment to the Bylaws reads:
The Residential Apartments shall be occupied and used for any purpose or use permitted under the zoning code of the County of Maui, including but not limited to resort hotel use, vacation rentals and long term or transient rentals by the respective owners thereof, their tenants, families, domestic servants and social guests, and specifically including time sharing purposes pursuant to a "time share plan" as defined in, and established in accordance with the requirements of, Chapter 514A of the Hawai'i Revised Statutes, as amended.

remanded with instructions to enter an order granting Plaintiff's April 2, 1998 motion for partial summary judgment in part as to the applicability of MCC § 19.37.010C and the lack of proper authorization of time sharing, for proceedings consistent with this decision, and to determine the appropriate remedies herein.