[No. A114157. First Dist., Div. Five. Dec. 27, 2006.]

MARK ZEMBSCH et al., Petitioners, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
HEALTH NET OF CALIFORNIA, INC., et al., Real Parties in Interest.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

COUNSEL

Pillsbury & Levinson, Arnold R. Levinson, Terrence J. Coleman and Rebecca Grey for Petitioners.

No appearance for Respondent.

Lewis Biribois Bisgaard & Smith, Raul L. Martinez and Elise D. Klein for Real Parties in Interest Health Net of California, Inc., and Health Net, Inc.

Reed Smith, John E. Dittoe and Joseph P. Mascovich for Real Party in Interest Alta Bates Medical Group.

OPINION

**GEMELLO, J.**—Petitioners Mark and Kimberly Zembsch seek writ review of an order compelling them to arbitrate their claims against their health insurance provider, Health Net of California, Inc., and Alta Bates Medical Group, the physician group that provides medical care to the Zembsch family. In the published part of our opinion, we hold that writ review is appropriate and grant the petition for writ of mandate. We address whether the Health Net enrollment form signed by Mark Zembsch complied with Health and Safety Code section 1363.1, subdivision (b). That statute requires health care service plans that require binding arbitration to settle disputes to provide a disclosure of arbitration that is "prominently displayed on the enrollment form signed by each subscriber or enrollee." (Health & Saf. Code, § 1363.1, subd. (b).)[1] We hold that the enrollment form does not comply with the statutory requirement that the arbitration disclosure be "prominently displayed." Noncompliance with the statute renders any arbitration agreement between Health Net and the Zembschs unenforceable.

In the unpublished part of our opinion, we consider whether Health Net met its burden of proving the existence of an arbitration agreement applicable to the Zembschs' claims. We hold that Health Net did not meet its burden of proving the existence of an arbitration agreement for the years 2002 through

---

[1] Health and Safety Code section 1363.1 provides in pertinent part: "Any health care service plan that includes terms that require binding arbitration to settle disputes and that restrict, or provide for a waiver of, the right to a jury trial shall include, in clear and understandable language, a disclosure that meets all of the following conditions: [¶] . . . [¶] (b) The disclosure shall appear as a separate article in the agreement issued to the employer group or individual subscriber and shall be prominently displayed on the enrollment form signed by each subscriber or enrollee."

All further statutory references are to the Health and Safety Code unless otherwise indicated.

2004. We do not decide whether Health Net met its burden of proving an applicable agreement in 2005 because the arbitration disclosure signed by Mark Zembsch does not comply with section 1363.1, subdivision (b).

FACTUAL AND PROCEDURAL BACKGROUND

Although the parties offer sharply divergent versions of the facts surrounding the Zembschs' underlying claims, the Zembschs' petition for writ of mandate seeks review only of the trial court order compelling them to arbitrate. The facts relevant to the issue of arbitrability, and thus to our disposition of this writ petition, are largely undisputed. We summarize these facts below.

*The Health Net Plan*

Petitioner Mark Zembsch is an attorney employed by the City of Berkeley (the City). As an employee of the City, Zembsch and his family were eligible for group health insurance coverage under a group hospital and professional service agreement between the City and Health Net of California, Inc. (Health Net). On May 9, 2002, Zembsch signed a form enrolling himself, his wife, and his two children in a Health Net plan. The plan Zembsch elected provided health maintenance organization (HMO) coverage. With this type of coverage, most services are provided by or coordinated with a member's primary care physician and a contracting physician group. Alta Bates Medical Group (Alta Bates) is the physician group that, in contract with Health Net, provides medical care to the Zembsch family.

Although the plan contemplates that most medical care will be provided by the contracting physician group, Health Net's plan permits members to receive a "standing referral" to a specialist. Such a referral allows a member to see a specialist without receiving a specific referral from the member's primary care physician for each visit. A standing referral is authorized by the plan if it is determined to be necessary by the primary care physician, Health Net's medical director, and the member.

*The Health Net Enrollment Form*

The enrollment form that Zembsch signed when he joined the Health Net plan is a one-page document entitled "Member Enrollment and Change Form."[2] Most of the form is a series of blank spaces in which the enrollee fills in personally identifying information. The blanks appear in four boxes

---

[2] A redacted copy of the enrollment form is attached as appendix A to this opinion. Its quality is poor, but this is the copy of the form that was before the trial court.

separated by boldface black lines. Beneath a boldface black line at the very bottom of the page are two single-spaced, unindented "paragraphs" printed in the smallest typeface used on the form.[3] The first and longer of these two paragraphs concerns the enrollee's authorization for the release of medical information. Immediately above the signature line the following paragraph appears: "Arbitration Agreement: I understand that any dispute or controversy, except medical malpractice, that may arise regarding the performance, interpretation or breach of the agreement between myself (and/or any enrolled family member) and Health Net, Health Net Life Insurance Company or any Participating Physician Group/Independent Physicians Association, whether arising in contract, tort or otherwise, must be submitted to arbitration in lieu of a jury or court trial. Please sign and date this application below. Your signature indicates that you have completed all requested information as accurately as possible and understand all agreements implied including your agreement to submit disputes to binding arbitration."

*The Dispute Over a Standing Referral*

The Zembschs' five-year-old son, Jack, suffers from a life-threatening condition known as metatropic dysplasia. Metatropic dysplasia is an extremely rare form of dwarfism characterized by shortened limbs and a badly deformed spine. Jack suffers from multiple orthopedic problems including severe kyphoscoliosis, torticollis, and hip flexion contracture. The small thoracic cavity and stiff chest wall resulting from the condition cause severe restrictive lung disease and can result in cardiopulmonary compromise later in life. Children afflicted with metatropic dysplasia may require tracheotomy and ventilator support. The severity of the condition increases as Jack's skeleton grows, which adds urgency to this writ proceeding.

Given the rarity of Jack's condition, there are very few physicians with any substantial experience in treating it. As a consequence, in August 2004 the Zembschs sought a standing referral to Dr. William G. Mackenzie at the Alfred I. duPont Hospital for Children in Wilmington, Delaware. According to the Zembschs' primary care physician, Dr. Mackenzie is recognized as the leading expert in the treatment of metatropic dysplasia. Alta Bates denied the Zembschs' request because Dr. Mackenzie was an out-of-network provider and Alta Bates determined that the services requested were available "within the Alta Bates Medical Group Network." The Zembschs then filed a number of appeals of Alta Bates's decision, all of which were denied by Health Net.

---

[3] Because a new topic is generally introduced by an indented line or, in the block style, a line of white space, we hesitate to call the provision a "paragraph."

*The Zembschs' Action Against Health Net and Alta Bates*

On November 7, 2005, the Zembschs filed an action against Health Net and Alta Bates in the Superior Court of Alameda County. Two days later, Health Net issued a standing referral for Jack Zembsch to obtain ongoing consultations with Dr. Mackenzie. According to the Zembschs, this standing referral was inadequate because it was for consultation only.

The Zembschs then filed a first amended complaint on December 5, 2005, alleging breach of contract and a number of other causes of action arising out of defendants' alleged refusal to honor their obligations under the Health Net plan. Both Health Net and Alta Bates moved to compel arbitration and stay the action. Petitioners opposed the motions by raising various defenses. Among these defenses was the argument that the arbitration disclosure on Health Net's enrollment form failed to comply with section 1363.1 because the arbitration disclosure was not "prominently displayed" on the enrollment form signed by Zembsch. The Zembschs also argued later that Health Net had failed to establish the existence of an arbitration agreement applicable to their claims.

After extensive briefing and argument, the trial court granted defendants' motions in an order filed June 1, 2006. It rejected petitioners' argument that Health Net had failed to comply with section 1363.1. Specifically, the trial court concluded that the disclosure did not violate section 1363.1, subdivision (b) because it was sufficiently prominently displayed to comply with the statute. The trial court noted that "the subject disclosure is contained in a separate paragraph, and the heading is in bold type. While there is no doubt that the disclosure could have been made *more* prominent, the Court concludes that it adequately fits the standard definition of 'prominent,' i.e. 'standing out' . . . or 'readily noticeable.' " The trial court rejected the Zembschs' other arguments and accordingly held that "there is an enforceable written agreement between Health Net and [the Zembschs] to arbitrate the disputes set forth in [the Zembschs'] complaint herein." It ordered the Zembschs to submit their claims against Health Net and Alta Bates to arbitration.

On June 16, 2006, the Zembschs filed a petition for writ of mandate and/or prohibition in this court seeking review of the trial court order compelling arbitration. On June 22, 2006, we issued an order staying the action below and permitting real parties in interest to file points and authorities in opposition to the petition. Both Health Net and Alta Bates filed oppositions, to which petitioners replied.

## DISCUSSION

Petitioners raise challenges to the existence and enforceability of the arbitration agreement. We agree with petitioners that Health Net failed to meet its burden of proof with respect to the 2002 and 2004 agreements and that, in any event, the arbitration disclosure on Health Net's enrollment form does not comply with section 1363.1. Our conclusion renders consideration of petitioners' other arguments unnecessary.

### I. *Writ Review Is Appropriate*

Before discussing the merits of the parties' contentions, we address the propriety of granting writ review. Since review by extraordinary writ is rarely warranted, we explain our reasoning in some detail.

■ The Legislature has specifically made orders *denying* a petition to compel arbitration appealable. (Code Civ. Proc., § 1294, subd. (a).) In contrast, orders *compelling* arbitration are considered interlocutory and are not appealable. (*International Film Investors v. Arbitration Tribunal of Directors Guild* (1984) 152 Cal.App.3d 699, 703 [199 Cal.Rptr. 690] (*International Film Investors*).) "The rationale behind the rule making an order compelling arbitration nonappealable is that inasmuch as the order does not resolve all of the issues in controversy, to permit an appeal would delay and defeat the purposes of the arbitration statute." (*Wheeler v. St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 353 [133 Cal.Rptr. 775] (*Wheeler*).) Thus, writ review of orders directing parties to arbitrate is available only in "unusual circumstances" or in "exceptional situations." (*Independent Assn. of Mailbox Center Owners, Inc. v. Superior Court* (2005) 133 Cal.App.4th 396, 405 [34 Cal.Rptr.3d 659]; *Wheeler,* at p. 353.)

Nevertheless, California courts have held that writ review of orders compelling arbitration is proper in at least two circumstances: (1) if the matters ordered arbitrated fall clearly outside the scope of the arbitration agreement or (2) if the arbitration would appear to be unduly time consuming or expensive. (*International Film Investors, supra,* 152 Cal.App.3d at p. 704; *Atlas Plastering, Inc. v. Superior Court* (1977) 72 Cal.App.3d 63, 68 [140 Cal.Rptr. 59] (*Atlas Plastering*).) This case presents similar circumstances.

First, petitioners attack both the existence and enforceability of the arbitration agreement. They contend that Health Net has failed to prove the existence of an arbitration agreement applicable to this dispute. In addition, they argue that even if an arbitration agreement exists, it is unenforceable because the disclosure provision on the Health Net enrollment form signed by Zembsch does not comply with section 1363.1. As we explain below, we

agree and conclude that the matters ordered arbitrated are not within the scope of an enforceable arbitration agreement. In such a case, this court may properly review the trial court's order compelling arbitration by writ of mandate. (*Pagarigan v. Superior Court* (2002) 102 Cal.App.4th 1121, 1124 [126 Cal.Rptr.2d 124] [granting petition for writ of mandate where court agreed with petitioner that § 1363.1 was not preempted by federal law]; *Ramirez v. Superior Court* (1980) 103 Cal.App.3d 746, 757–758 [163 Cal.Rptr. 223] [issuing writ of mandate annulling order compelling arbitration where it was unclear whether party had knowingly waived right to jury trial and voluntarily agreed to arbitration of claims]; see also *Atlas Plastering, supra*, 72 Cal.App.3d at pp. 72–73 [issuing peremptory writ of mandate vacating order of joinder to arbitration of parties not in privity].)

Second, because we conclude that the trial court order compelling arbitration was improper, "the expense to the parties in participating in and seeking review of the arbitration is apparent." (*Atlas Plastering, supra*, 72 Cal.App.3d at p. 68; see also *Bertero v. Superior Court* (1963) 216 Cal.App.2d 213, 222 [30 Cal.Rptr. 719] [parties improperly ordered to arbitrate "would be put to the unnecessary delay and expense of an arbitration, further court proceedings, and an appeal, after which they would be required to start over"], disapproved on other grounds in *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1192 [8 Cal.Rptr.3d 517, 82 P.3d 727].) Furthermore, the arbitration provision in the Health Net contract would require petitioners and Health Net to "share equally the arbitrator's fees and expenses of administration involved in the arbitration." Petitioners presented declarations to the trial court demonstrating that the daily rate for arbitrators ranges from $4,000 to $10,000 and fees for a single arbitrator range from $200 to $600 per hour. And Zembsch declared that his family could not afford the expense of such an arbitration. These averments provide further support for our conclusion that the unique circumstances of this case justify granting writ review.[4]

Before concluding our discussion, we must dispose of one additional contention regarding the adequacy of petitioners' remedy. Health Net asserts that writ relief should be denied because petitioners have an adequate remedy under the independent medical review process prescribed by section

---

[4] After granting writ review, we discovered that another case recently decided in an unpublished opinion by this division also raised the issue of the adequacy of a Health Net arbitration disclosure. In contrast to the trial court's ruling in *Zembsch*, in the unpublished case the superior court denied Health Net's petition to compel arbitration, holding that a very similar arbitration disclosure failed to meet the requirements of section 1363.1. The existence of conflicting trial court rulings on this issue further strengthens our grant of writ review. (See, e.g., *Corbett v. Superior Court* (2002) 101 Cal.App.4th 649, 657 [125 Cal.Rptr.2d 46].)

1374.30.[5] That statute establishes the Independent Medical Review System within the Department of Managed Health Care. (§ 1374.30, subd. (a).) It permits review of enrollee grievances involving "disputed health care ser-vice[s]" provided that certain requirements are met. (§ 1374.30, subd. (d)(1).) Health Net's argument is misconceived, however, for it confuses petitioners' underlying claims on the merits with the matters raised by their petition for writ of mandate. In this court, petitioners challenge only the trial court order directing that their claims against Health Net and Alta Bates be resolved in an arbitral forum. The dispute over whether petitioners' claims on the merits are arbitrable is not one that can be resolved by the Department of Managed Health Care pursuant to section 1374.30. We are not persuaded that the administrative process constitutes an adequate remedy for petitioners' chal-lenge to the trial court's order compelling arbitration.

Having concluded that writ review is appropriate, we turn to the merits.

II. *Health Net Failed to Meet Its Burden of Proving the Existence of an Arbitration Agreement Applicable to the Zembschs' Claims for the Years 2002 to 2004*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

III. *Petitioners Cannot Be Compelled to Arbitrate Their Claims*

A. *Standard of Review*

We next consider whether the disclosure on the Health Net enrollment form complies with section 1363.1 so that any arbitration provision in Health Net's contracts with the City may be enforced against petitioners. Where the material facts are undisputed, a trial court's determination regarding compli-ance with section 1363.1 is subject to de novo review. (*Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425 [34 Cal.Rptr.3d 547] (*Robertson*).) In a mandate proceeding challenging an order compelling arbitration, we decide the issue of enforceability of the arbitration clause de novo. (See *Independent Assn. of Mailbox Center Owners, Inc. v. Superior Court, supra*, 133 Cal.App.4th at p. 405.)

B. *The Arbitration Disclosure Is Not "Prominently Displayed"*

Petitioners argue that even if Health Net has proven the existence of an agreement to arbitrate, any such agreement is unenforceable because the

---

[5] By issuing the order to show cause, we have decided this issue against Health Net. (See *Atlas Plastering, supra*, 72 Cal.App.3d at p. 68.)

[*]See footnote, *ante*, page 153.

arbitration disclosure on the enrollment form signed by Zembsch fails to comply with section 1363.1, subdivision (b) because it was not prominently displayed on that form.[7]

### 1. *Case Law Applying Section 1363.1, Subdivision (b)*

■ Subdivision (b) of section 1363.1 requires that the arbitration disclosure required by the statute be "prominently displayed on the enrollment form signed by each subscriber or enrollee." Three recent reported opinions have addressed whether arbitration disclosures complied with this requirement. In each case, the courts concluded that they did not. (See *Imbler v. PacifiCare of Cal., Inc.* (2002) 103 Cal.App.4th 567, 579 [126 Cal.Rptr.2d 715] (*Imbler*); *Malek v. Blue Cross of California* (2004) 121 Cal.App.4th 44, 61–62 [16 Cal.Rptr.3d 687] (*Malek*); *Robertson, supra,* 132 Cal.App.4th at pp. 1428–1429.)

■ In *Imbler*, Division Two of the Fourth District affirmed an order denying an insurer's petition to compel arbitration. (*Imbler, supra,* 103 Cal.App.4th at pp. 568, 579.) In discussing the statute's requirement that the arbitration disclosure be "prominently displayed," the *Imbler* court explained that " '[p]rominent' is defined as 'standing out or projecting beyond a surface or line,' or 'readily noticeable.' " (103 Cal.App.4th at p. 579.) The court concluded that the arbitration disclosure provision failed to comply with the statute's prominence requirement because: (1) the disclosure was written in the middle of an authorization for the release of medical records and an authorization for payroll deduction of premiums; and (2) the disclosure was in the same font as the rest of the paragraph and was not bolded, underlined, or italicized. (*Ibid.*) The court expressly rejected the insurer's arguments that section 1363.1, subdivision (b) was satisfied because the arbitration disclosure appeared just above the enrollee's signature line, was printed in typeface no smaller than the majority of text used on the page and was not appreciably smaller than the few headings on the page, and was " 'neither hidden [n]or buried.' " (*Imbler*, at p. 579.) The court held that the disclosure did not comply with the statute. (*Ibid.*)

The arbitration disclosure in *Malek* was preceded by the words "**ARBITRATION AGREEMENT**" printed in capital letters in boldface type. (*Malek, supra,* 121 Cal.App.4th at p. 51, fn. 2.) The disclosure itself was in

---

[7] Petitioners also contend that Health Net's disclosure was not phrased in the "clear and understandable language" that the statute requires and that Health Net failed to comply with subdivision (d) of section 1363.1 because the City did not sign an arbitration disclosure. (§ 1363.1; *id.,* subd. (d).) We do not address these arguments because we conclude that the disclosure violates subdivision (b) of the statute. (See *Robertson, supra,* 132 Cal.App.4th at p. 1431, fn. 7.)

the same type size and font as other provisions authorizing deductions and the release of medical information but was contained in a separate numbered paragraph. (*Id.* at p. 61.) The Second District concluded that the disclosure did not stand out and was not readily noticeable. (*Ibid.*) The court held that the disclosure did not comply with section 1363.1, subdivision (b). (*Malek,* at p. 61.)

In *Robertson,* Division Two of this District reviewed the arbitration disclosure on a Health Net enrollment form, but that form differs from the one before us. (See *Robertson, supra,* 132 Cal.App.4th at pp. 1423 & fn. 3, 1433.) The arbitration disclosure at issue in *Robertson* was located on the second page of the enrollment form within a section entitled "ACCEPTANCE OF COVERAGE." (*Id.* at p. 1423.) The disclosure was preceded by the boldface subheading **"Arbitration Agreement"** and was separated from the other paragraphs in the section by an extra space added before and after the first and last sentences of the disclosure. (*Ibid.*) The text of the disclosure was printed in the same font and size as the other paragraphs in the section in which it appeared. (*Ibid.*) The court first held that the disclosure did not satisfy the requirements of section 1363.1, subdivision (d), because it was not placed " 'immediately before the signature line provided for the individual enrolling in the health care service plan.' " (*Robertson,* at pp. 1426–1428, quoting § 1363.1, subd. (d).) The court next held that the disclosure failed to meet the prominence requirement of the statute because "(1) the provision is some distance from the enrollees' signature line, (2) the provision is printed in the same font or typeface as the rest of the form, and (3) only the title is in bolded type."[8] (*Robertson,* at p. 1429.)

### 2. *The Health Net Arbitration Disclosure Does Not Stand Out and Is Not Readily Noticeable*

Our review of the relevant case law and the enrollment form at issue leads us to conclude that the arbitration disclosure on Health Net's enrollment form does not satisfy the prominence requirement of section 1363.1, subdivision (b). First, we agree with the definition of "prominent" used by both

---

[8] Health Net argues that *Robertson*'s discussion of subdivision (b) of section 1363.1 was "pure *dicta*" because the court had already concluded that the disclosure violated subdivision (d) of the statute. This argument is answered by the concluding footnote of *Robertson,* where the court explained that it would not address Health Net's other arguments because "Health Net has not complied with section 1363.1, subdivisions (b) *and* (d)." (*Robertson, supra,* 132 Cal.App.4th at p. 1431, fn. 7, italics added.) Moreover, the California Supreme Court has observed, " 'where two independent reasons are given for a decision, neither one is to be considered mere *dictum,* since there is no more reason for calling one ground the real basis of the decision than the other. The ruling on both grounds is the judgment of the court and is of equal validity. [Citations.]' [Citations.]" (*Southern Cal. Ch. of Associated Builders etc. Com. v. California Apprenticeship Council* (1992) 4 Cal.4th 422, 431, fn. 3 [14 Cal.Rptr.2d 491, 841 P.2d 1011].)

*Imbler, supra,* 103 Cal.App.4th 567, and *Robertson, supra,* 132 Cal.App.4th 1419. To satisfy the requirements of the statute, the disclosure must " 'stand[] out or project[] beyond a surface or line' " or be " 'readily noticeable.' " (*Imbler,* at p. 579; accord, *Robertson,* at p. 1429.) The instant disclosure does neither.

Like the disclosure in *Robertson,* the disclosure before us is printed in the same font or typeface as most of the form; the disclosure heading appears to be in faint boldface type.[9] (*Robertson, supra,* 132 Cal.App.4th at p. 1429.) The disclosure is the second of two single-spaced paragraphs of small, condensed type located at the bottom of the enrollment form. Neither the disclosure nor the preceding paragraph is indented, and the two paragraphs are not separated from each other by any lines or spacing. The disclosure is in the same font as the preceding paragraph, and it is "not bolded, underlined or italicized." (*Imbler, supra,* 103 Cal.App.4th at p. 579.) In contrast, some of the text of the form is printed in boldface type, in all capitals or in larger fonts, so Health Net clearly could have made the text of the disclosure more prominent had it chosen to do so. The disclosure does not stand out from the remainder of the document and is not readily noticeable.

The Health Net disclosure before us is *less* prominent than the disclosures discussed in *Robertson, supra,* 132 Cal.App.4th 1419, and *Malek, supra,* 121 Cal.App.4th 44. As is clear from the form attached as an appendix to the *Robertson* opinion, that disclosure paragraph was set off from the remainder of the text by blank lines before the first and after the last sentences. (*Robertson,* at pp. 1423, 1433.) This spacing gives it greater prominence and makes it easier to read than the disclosure we are considering. The disclosure in *Malek* was preceded by the heading **"ARBITRATION AGREEMENT"** in clear, boldface type. (*Malek,* at p. 51, fn. 2.) In addition, the disclosure in *Malek* was contained in a separate numbered paragraph. (*Id.* at p. 61.) Neither of these two distinguishing features is present here.

In sum, we conclude that the arbitration disclosure on the enrollment form signed by Zembsch was not "prominently displayed" and, therefore, does not comply with the terms of section 1363.1, subdivision (b).

---

[9] Petitioners argue that the heading is not in bold, despite the trial court's finding that it was. Health Net contends that we must defer to the trial court's factual finding on this issue. We do not agree. Whether this heading is in boldface or not may be determined from an examination of the document itself. The enrollment form is part of the record, and "we believe that a trial court is in no better position than an appellate court to evaluate a document against [the] statutory standard." (*Harustak v. Wilkins* (2000) 84 Cal.App.4th 208, 214 [100 Cal.Rptr.2d 718]; accord, *Dorman v. International Harvester Co.* (1975) 46 Cal.App.3d 11, 18, fn. 8 [120 Cal.Rptr. 516].) Our independent examination of the document leads us to conclude that the boldface is slight, and the font is small and virtually indistinguishable from the remainder of the text.

### 3. *The Disclosure Does Not Substantially Comply with the Statute*

Health Net argues that even if its disclosure does not comply with the literal terms of section 1363.1, the arbitration agreement may be enforced because there has been substantial compliance with the statute. According to Health Net, the purpose of section 1363.1 was served because there is no claim that Zembsch did not read or understand the arbitration disclosure. Thus, the statute's objective—"to safeguard against patients unknowingly waiving their constitutional right to a jury trial" (*Malek, supra,* 121 Cal.App.4th at p. 64)—has been achieved.

At the outset we observe that there is some doubt whether section 1363.1 permits mere substantial compliance with its provisions. As the court in *Malek* noted, the statute is phrased in clearly mandatory terms and provides that disclosures " 'shall be prominently displayed.' " (*Malek, supra,* 121 Cal.App.4th at p. 72.) The language of the statute "does not expressly sanction mere substantial compliance with its provisions." (*Ibid.*) Nevertheless, the court in *Malek* refused to rule out the application of the doctrine of substantial compliance in an appropriate case. (*Ibid.*) *Malek* narrowly held that the disclosure it was reviewing did not substantially comply with the statute. (*Ibid.*) Even assuming that section 1363.1 does not foreclose application of the doctrine of substantial compliance, we hold that there has not been substantial compliance here.

■ The doctrine of substantial compliance does *not* allow an excuse to literal noncompliance in every situation. (*Robertson, supra,* 132 Cal.App.4th at p. 1430.) It "excuses literal noncompliance *only* when there has been 'actual compliance in respect to the substance essential to *every reasonable objective of the statute.*' [Citations.]" (*Ibid.,* italics added.) Logically, then, we must examine the objectives of section 1363.1 to determine whether Health Net's disclosure substantially complies with its goals. "The purpose of section 1363.1 is to disclose the requirement to arbitrate *and* to ensure a knowing waiver of the right to a jury trial." (*Malek, supra,* 121 Cal.App.4th at p. 72, original italics.) To ensure that the requirement to arbitrate is adequately disclosed, the Legislature has directed that the disclosure be "prominently displayed on the enrollment form signed by each subscriber or enrollee." (§ 1363.1, subd. (b).) Without a proper disclosure, we cannot be certain that a subscriber has knowingly waived the right to jury trial. In this case, the failure of Health Net to display its disclosure with the prominence required by the statute casts doubt on whether Zembsch knowingly waived his rights. (See *Robertson,* at p. 1431; *Malek,* at p. 73.) In such circumstances, we are unwilling to hold that there has been " 'actual compliance in respect to the substance essential to every reasonable objective of the statute.' [Citations.]"

(*Robertson*, at p. 1430.) Therefore we reject Health Net's claim that its disclosure substantially complies with the statute.

> C. *The Administrative Remedies in the Knox-Keene Act Are Not Exclusive and Noncompliance with Section 1363.1 Renders an Arbitration Agreement Unenforceable*

Health Net argues that the arbitration agreement may be enforced despite the violation of the statute because the only remedies for violations of section 1363.1 are the administrative enforcement remedies contained in the Knox-Keene Health Care Service Plan Act of 1975, section 1340 et seq. (the Knox-Keene Act). *Malek* rejected a very similar argument, and we follow its reasoning. (*Malek, supra,* 121 Cal.App.4th at pp. 67–70.)

Health Net first relies on cases holding that various provisions of the Knox-Keene Act do not create either private rights of action or independent bases for liability. (See *Ochs v. PacifiCare of California* (2004) 115 Cal.App.4th 782, 792 [9 Cal.Rptr.3d 734]; *Desert Healthcare Dist. v. PacifiCare FHP, Inc.* (2001) 94 Cal.App.4th 781, 791 [114 Cal.Rptr.2d 623]; *Samura v. Kaiser Foundation Health Plan, Inc.* (1993) 17 Cal.App.4th 1284, 1299 [22 Cal.Rptr.2d 20].) Health Net then reasons that the enforcement of section 1363.1 is vested exclusively in the Department of Managed Health Care. As a consequence, Health Net argues, courts have no business refusing to enforce arbitration agreements merely because there has been a violation of the disclosure requirements of section 1363.1. This argument misses the mark. The Zembschs do not contend that section 1363.1 gives them any private right of action against Health Net. Their reliance on the statute is purely defensive. They do not assert that Health Net is liable to them, in damages or otherwise, because it has violated the statute. They argue only that Health Net's failure to comply with section 1363.1 means that the arbitration provision of Health Net's contract with the City may not be enforced as to them.

▉ Nor are we persuaded that the Legislature intended that the sole consequence of a violation of section 1363.1 should be administrative penalties imposed by the Department of Managed Health Care. As *Malek* explained, section 1363.1 is more than a pure notice statute. (*Malek, supra,* 121 Cal.App.4th at p. 69.) The notice requirements of the statute are intended "to ensure consent to a *binding agreement to arbitrate.*" (*Ibid.,* original italics.) The manifest purpose of the statute is to make certain that the parties have agreed to be bound to contractual arbitration. (*Ibid.*) We agree with Justice Croskey's well-reasoned conclusion in *Malek* that "[i]t would be absurd to impose an administrative penalty on a health service plan provider for failure to comply with the arbitration disclosure requirements but permit

arbitration to go forward. Under those circumstances, there would be no consent to arbitrate." (*Ibid.*)

Health Net also argues that nothing in the language or legislative history of section 1363.1 indicates that the Legislature intended that violation of the statute would render an arbitration agreement unenforceable.[10] But as *Malek* explains, the Legislature's failure to spell out the consequences of a violation of section 1363.1 is of no legal significance. (*Malek, supra,* 121 Cal.App.4th at pp. 67–68.) The statute is phrased in mandatory terms, and "[t]here is no need to explicitly state the consequences of failure to comply when this statutory language is clear and unambiguous." (*Id.* at p. 68.) The objectives of the statute would be subverted if a health care service plan could compel a member to arbitrate even if the plan had failed to provide the statutorily required notice. The effect would be to compel a member to arbitrate a dispute although the member's knowing consent to waiver of the right to jury trial has not been obtained.

Moreover, the fallacy of Health Net's position—that a violation of the statute does not preclude enforcement of an arbitration agreement—becomes obvious if we consider some of its implications. For example, subdivision (a) of the statute requires that the arbitration disclosure "clearly state whether the plan uses binding arbitration to settle disputes." (§ 1363.1, subd. (a).) If a violation of the disclosure provisions of section 1363.1 did not render an arbitration agreement unenforceable, then a health care service plan could compel a subscriber to arbitrate even if it had not disclosed "whether the plan uses binding arbitration to settle disputes." The absurdity of permitting enforcement of an undisclosed arbitration agreement is obvious, but if we were to follow Health Net's reasoning to its logical conclusion, the only remedy for such a violation of section 1363.1, subdivision (a) would be administrative penalties.

We hold that a violation of section 1363.1 renders an arbitration agreement unenforceable. (*Robertson, supra,* 132 Cal.App.4th at p. 1429; *Malek, supra,* 121 Cal.App.4th at pp. 62–70; see *Imbler, supra,* 103 Cal.App.4th at p. 579.) As a consequence, any arbitration agreement between the Zembschs and Health Net is unenforceable, and the trial court erred in compelling petitioners to arbitrate.[11]

---

[10] Health Net's request for judicial notice of certain legislative history material is denied because the language of the statute is unambiguous. (*Malek, supra,* 121 Cal.App.4th at p. 64.)

[11] Because there is no independent arbitration agreement between the Zembschs and Alta Bates, our conclusion that the Health Net arbitration agreement may not be enforced against petitioners necessarily means that the Zembschs are not required to arbitrate with Alta Bates either.

## DISPOSITION

The order to show cause is discharged, and the petition is granted. Let a peremptory writ of mandate issue directing the trial court to vacate its order compelling arbitration, and to enter a new and different order denying the motions to compel arbitration. The previously issued stay shall dissolve upon the finality of this decision in this court. (Cal. Rules of Court, rule 24(b)(1).) In the interests of justice, this decision shall be final as to this court 15 calendar days after filing. (*Id.*, rule 24(b)(3).) Petitioners shall recover their costs. (*Id.*, rule 56(m).)

Jones, P. J., and Bruiniers, J.,* concurred.

A petition for a rehearing was denied January 10, 2007, and on January 11, 2007, the opinion was modified to read as printed above. The petition of real parties in interest for review by the Supreme Court was denied March 28, 2007, S149626. Werdegar, J., did not participate therein.

---

*Judge of the Superior Court of Contra Costa County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.