68 Cal.Rptr.3d 588 (2007)
157 Cal.App.4th 172
Earl SWAYNE, et al., Plaintiffs and Respondents,
v.
TORRANCE CARE CENTER WEST, INC., et al., Defendants and Appellants.
No. B195353.
Court of Appeal of California, Second District, Division Four.
November 26, 2007.
*589 Lewis, Brisbois, Bisgaard & Smith, Bryan R. Reid and Jennifer C. Hsu, San Bernardino, for Defendants and Appellants.
Berglund, Johnson & Sommer, Rana Kawar and Jerrie S. Weiss, Woodland Hills, for Plaintiffs and Respondents.
WILLHITE, J.
Defendants Torrance Care Center West, Inc., dba Torrance Care Center West (hereafter "TCC") and William Nelson appeal from the trial court's denial of their petition to compel arbitration of the claims made by plaintiffs Earl Swayne, et al. We conclude that the arbitration agreements at issue are unenforceable, because they fail to contain a properly displayed disclosure stating that consent to arbitration is not a precondition for admission or medical treatment. (See Health & Saf.Code, § 1599.81, subd. (a); Title 22, Cal.Code Regs., § 72516, subd. (d).) Therefore, we affirm.

BACKGROUND
TCC is a skilled nursing facility.[1] Plaintiffs are the surviving heirs of Lillie Rogers, and the executor of her estate. Plaintiffs filed a complaint against TCC and Nelson (TCC's owner/operator), alleging that TCC failed to provide adequate care to Lillie Rogers during her residency from March 1, 2004 to April 5, 2005, resulting in her death. Plaintiffs alleged causes of action for, among other things, elder abuse, wrongful death, intentional infliction of emotional distress, and professional negligence.[2]
TCC and Nelson petitioned to compel arbitration. They produced copies of a power of attorney executed by Lillie Rogers on April 24, 2003, in favor of her granddaughter Gwendolyn McCall (one of the plaintiffs), and of two arbitration agreements executed by McCall upon Rogers' admission to TCC on March 1, 2004. The arbitration agreements (one of which related specifically to medical malpractice claims, and the other to services provided by TCC) were comprehensive, and in substance required arbitration of all claims arising from Rogers' treatment or care, except for claims under the Patients' Bill of Rights covered by Health and Safety Code section 1430 and Title 22, California Code of Regulations, section 72527.
Plaintiffs opposed the petition to compel arbitration on various grounds. As here relevant, they argued that the arbitration agreements did not comply with the disclosure requirements of Title 22, California Code of Regulations, section 72516. They also argued that the power of attorney was invalid, and did not give McCall the authority to consent to arbitration on Rogers' behalf.
The trial court denied the petition. It ruled that evidence produced by plaintiffs (records from Rogers' stay at TCC) demonstrated that Rogers was not competent at the time she was admitted to TCC. Because the power of attorney was nondurable, the court found that it was terminated by Rogers' incompetence, and did not authorize McCall to sign the arbitration agreements.

*590 DISCUSSION
TCC and Nelson contend that they proved the validity of the arbitration agreements, and that the power of attorney executed by Rogers was not terminated. Plaintiffs respond in part that regardless of whether the power of attorney remained valid, the arbitration agreements are unenforceable because they do not contain the disclosure required by the State Department of Health Services in Title 22, California Code of Regulations, section 72516, subdivision (d). We agree, and therefore do not reach the issue whether the power of attorney was terminated.
Skilled nursing facilities are governed by a comprehensive statutory and regulatory scheme. (Flores v. Evergreen at San Diego, LLC (2007) 148 Cal.App.4th 581, 590, 55 Cal.Rptr.3d 823.) As part of this scheme, Health and Safety Code section 1599.81 (hereafter "section 1599.81") provides in relevant part that "[a]ll arbitration clauses shall be included on a form separate from the rest of the admission contract" (§ 1599.81, subd. (b)), and that "[a]ll contracts of admission that contain an arbitration clause shall clearly indicate that agreement to arbitration is not a precondition for medical treatment or for admission to the facility" (§ 1599.81, subd. (a)).
The Legislature delegated to the State Department of Health Services the authority to formulate a standard admission agreement meeting these requirements. (Health & Saf.Code, § 1599.61, subd. (a).) All facilities must use the standard agreement (ibid.), and "[n]o facility shall alter the standard agreement unless so directed by the department" (id., subd. (b)(1)).
In Title 22, California Code of Regulations, section 72516 (hereafter "section 72516"), the Department adopted a standard admission agreement as "the sole contract of admission between residents and the licensee." (§ 72516, subd. (a).) In relevant part, section 72516 provides that "[a]ny arbitration agreement shall be separate from the Standard Admission Agreement and shall contain the following advisory in a prominent place at the top of the proposed arbitration agreement, in boldface font of not less than 12 point type: 'Residents shall not be required to sign this arbitration agreement as a condition of admission to this facility.'" (§ 72516, subd. (d).)
In the instant case, each arbitration agreement produced by TCC and Nelson contains the substance of the required disclosure. But neither agreement "clearly indicate[s]" that consent to arbitration is not required for admission or treatment (§ 1599.81, subd. (a), italics added), in that neither contains in a prominent spot at the top, in bold print, the advisory required by section 72516, subdivision (d).
In one arbitration agreement, the disclosure does not appear until the fourth paragraph, Article 4, which states: "Agreement to arbitrate is not a precondition for medical treatment or for admission to the Facility." Although appearing in a separate paragraph, this disclosure is in the middle of page, and is not highlighted in any way so as to distinguish it from the other paragraphs. In the other arbitration agreement, the disclosure does not appear until the second sentence of Article 3, the third paragraph, which states: "By signing this arbitration agreement below, the Resident agrees to be bound by the foregoing arbitration provisions. The Resident acknowledges that he or she has the option of not signing this arbitration agreement and not being bound by the arbitration provisions contained herein. The execution of this arbitration agreement is not a precondition to receiving care and supervision, protective supervision, personal care, personal activities of *591 daily living, or health related services as defined by Health & Safety Code § 1569.2 or for admission to the Facility." Like the disclosure in the first agreement, this disclosure appears in the middle of the page, and is not highlighted in any way to distinguish it from the other provisions.
The failure of the arbitration agreements to properly display the required disclosure is fatal to enforcement. In the related context of arbitration disclosures in health care service plans, a series of decisions has invalidated arbitration clauses for failure to comply with Health and Safety Code section 1363.1, which requires that arbitration disclosures in such plans "appear as a separate article" and be "prominently displayed on the enrollment form signed by each subscriber or enrollee." (Health & Saf.Code, § 1363.1, subd. (b).) Because the purpose of requiring prominent display is to "ensure consent to a binding agreement to arbitrate" (Malek v. Blue Cross of California (2004) 121 Cal. App.4th 44, 69, 16 Cal.Rptr.3d 687 (Malek )), courts have held that failure to comply with the "prominently displayed" requirement renders the arbitration clause unenforceable. (Ibid.; see Medeiros v. Superior Court (2007) 146 Cal.App.4th 1008, 1015, 1018-1019, 53 Cal.Rptr.3d 307; Zembsch v. Superior Court (2006) 146 Cal. App.4th 153, 168, 53 Cal.Rptr.3d 69 (Zembsch); Robertson v. Health Net of California, Inc. (2005) 132 Cal.App.4th 1419, 1428-1429, 34 Cal.Rptr.3d 547 (Robertson).)
TCC and Nelson do not dispute that the arbitration agreements fail to comply with section 72516, subdivision (d). Rather, they distinguish the cases applying Health and Safety Code section 1363.1 on the ground that they rely on the language of that section alone. But the distinction is unpersuasive. The display requirements of sections 1599.81 and 72516, like that of Health and Safety Code section 1363.1, are mandatory, and are designed to ensure a binding arbitration agreement. That is, the statutory mandate that a nursing facility's admission agreement "clearly indicate" that consent to arbitration is not required (§ 1599.81, subd. (a)), and the regulatory requirement that this admonition be in a prominent place at the top of the agreement in bold-face font of not less than 12 point type (§ 72516, subd. (d)), ensure that the resident voluntarily waives the right to a jury trial and consents to arbitration without the compulsion inherent in the belief that such consent is required for admission to the facility or receipt of treatment. The Legislature has decreed that facilities must use the standard agreement created by Department regulations (Health & Saf.Code, § 1599.61, subd. (a)), and that facilities cannot alter it unless permitted by the Department (id., subd. (b)(1)). It would violate the purpose of the statutory and regulatory requirements to permit arbitration to occur despite the failure to comply with the display of a disclosure designed to ensure a valid arbitration agreement. (See Malek, supra, 121 Cal.App.4th at pp. 69-70, 16 Cal. Rptr.3d 687.) Thus, like courts applying the arbitration disclosure requirements for health care service plans (Health & Saf. Code, § 1363.1), we conclude that the arbitration agreements involved here are unenforceable for failure to comply with the disclosure requirement of section 1599.81, subdivision (a), as implemented by 72516, subdivision (d).
Further, the doctrine of substantial compliance, which "excuses literal noncompliance only when there has been `actual compliance in respect to the substance essential to every reasonable objective of the statute'" (Robertson, supra, 132 Cal. App.4th at p. 1430, 34 Cal.Rptr.3d 547), does not save either arbitration agreement. As we have noted, the primary *592 objective of requiring the highlighted disclosure is to ensure a voluntary waiver of the right to a jury trial, with knowledge that consent to arbitration is not required for admission to the facility or receipt of treatment. Hence, the absence of a properly displayed disclosure casts doubt on the validity of the arbitration agreement. (See Zembsch, supra, 146 Cal.App.4th at p. 166, 53 Cal.Rptr.3d 69.) Under these circumstances, as has been held in the context of Health and Safety Code section 1363.1, the failure to highlight the disclosure precludes a finding of substantial compliance. (Id. at pp. 166-167, 53 Cal. Rptr.3d 69.)

DISPOSITION
The order denying the petition to compel arbitration is affirmed.
EPSTEIN, P.J., and, MANELLA, J., concur.
NOTES
[1] As defined in Health and Safety Code section 1250, subdivision (c), a "`[s]killed nursing facility' means a health facility that provides skilled nursing care and supportive care to patients whose primary need is for availability of skilled nursing care on an extended basis."
[2] Earl Swayne sued in his individual capacity as a surviving heir, and as executor of the estate. The remaining heirs (Carl Swayne, Darryl Swayne, Myrna Binion Williams, Rochelle Batiste, and Gwendolyne McCall) sued in their individual capacities.