Filed 12/26/23  Young v. Axos Financial CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| TERRANCE YOUNG, | D080970 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2021-00019535-CU-OE-CTL) |
| AXOS FINANCIAL, INC. et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Dismissed in part, reversed in part, and remanded.

Justice Law Corporation, Douglas Han, Shunt Tatavos-Gharajeh, and Talia Lux, for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton LLP, Thomas R. Kaufman and Devin S. Lindsay, for Defendants and Respondents.

Plaintiff Terrance Young appeals two simultaneously issued trial court orders:  (1) an order compelling arbitration on his individual claims against Axos Financial, Inc. and Axos Bank (collectively Axos) for the violation of the Private Attorneys General Act of 2004 (Labor Code,[1] §§ 2698 et seq.)

---

[1]     Further undesignated statutory references are to the Labor Code.

("PAGA"), and (2) an order dismissing his nonindividual representative PAGA claims pursued on behalf of other employees. Young argues that (1) the orders are appealable under the death knell doctrine, (2) his agreement to arbitrate was invalid, and (3) he has standing to serve as a PAGA representative even if his individual PAGA claims have been compelled to arbitration.

We conclude that the order dismissing Young's nonindividual PAGA claims is immediately appealable under the death knell doctrine. At the same time, we determine that the order compelling his individual claims to arbitration is not appealable, and we decline to exercise discretionary writ review.

As to the merits of Young's appeal of the order dismissing his nonindividual PAGA claims, we are guided by the rule announced in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*) that wholesale representative claim waivers are invalid, which remains good law even after the United States Supreme Court's decision in *Viking River Cruises, Inc. v. Moriana* (2022) 142 S.Ct. 1906 (*Viking River*). Given California's rule prohibiting such claim waivers, the trial court erred by determining that Young's waiver was valid, and we must reverse the order dismissing Young's nonindividual PAGA claims. The California Supreme Court's decision in *Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104 (*Adolph*), filed subsequent to the parties' briefing, confirms that Young retains standing to pursue his nonindividual PAGA claims despite the court's order compelling arbitration of his individual claims.

2

FACTUAL AND PROCEDURAL BACKGROUND

Beginning January 16, 2018, Axos[2] employed Young as a Deposit Operation Specialist.

In a letter dated February 23, 2021, Young provided written notice, pursuant to section 2699.3, subdivision (a)(1), to the California Labor & Workforce Development Agency (LWDA) of his intent to bring a PAGA action against Axos. Axos terminated Young's employment on March 3, 2022.

The LWDA did not pursue claims against Axos. On May 3, 2021, Young filed a PAGA action against Axos as an individually aggrieved former employee (the "individual" claims) and on behalf of other aggrieved employees (the "nonindividual" or "representative"[3] claims). The complaint alleged Labor Code violations by Axos of sections 201, 202, 203, 204, 218.5, 221, 226, subdivision (a), 226.3, 226.7, 510, 512, subdivision (a), 558, 1174, subdivision (d), 1194, 1197, 1197.1, 1198, 2800 and 2802 actionable under PAGA.

Axos moved to compel arbitration of Young's individual PAGA claims and to dismiss the nonindividual PAGA claims. In support of the motion, Axos provided a declaration from a Vice President of its human resources department stating that employees generally sign an arbitration agreement pursuant to Axos's "onboarding procedure." It attached to the declaration an

___

[2]    Axos operated as BofI Federal Bank at the time.

[3]    Unless otherwise indicated, we use the term "representative" in the sense that one plaintiff employee represents other absent employees, rather than in the sense that plaintiff employee represents the state, even though PAGA claims are also representative in the latter sense. (See *Viking River*, *supra*, 142 S.Ct. at p. 1916.)

arbitration agreement displaying Young's signature, dated January 16, 2018 (the Agreement).

The Agreement requires binding arbitration of "any claim, dispute, and/or controversy that either party may have against the other . . . arising from, related to, or having any relationship or connections whatsoever with Employee's seeking employment with, employment by, or other association with or termination by BofI." The Agreement also includes a waiver of class, representative, and private attorney general claims as follows:

> "Each Party hereby waives any right it might otherwise have to commence, be a party to, or a class member of, any court action, including collective actions, against the other Party. Further, each of the Parties waives any right it might otherwise have to commence or be a party to any group, class or collective action claim in arbitration or any other forum. . . . In addition, no dispute in which the Parties have adverse interests shall be brought, heard or arbitrated as, or as part of, a class or collective action, or in an action in which either Party acts in a representative or private attorney general capacity on behalf of a class of persons or the general public."

There is also a severability clause, providing that the Agreement remains valid and enforceable even if a portion of it is deemed invalid or unenforceable.

Young opposed Axos's motion to compel arbitration and to dismiss the nonindividual claims, providing a declaration stating that on his first day of employment, Axos provided Young with a stack of paperwork to complete that day; he was required to sign the paperwork to begin his job; nobody from Axos explained the contents or meaning of the documents to him; he has no recollection of what documents he signed; and he only learned he had signed an arbitration agreement when his attorneys obtained his personnel file.

4

On August 26, 2022, the trial court granted the motion, compelling arbitration of Young's individual PAGA claims and dismissing his nonindividual claims. As to the arbitration of Young's individual claims, the court found it was undisputed that Young entered into the arbitration agreement and that the agreement encompassed his claims. The court further rejected Young's argument that Labor Code section 432.6, subdivision (a) invalidates the arbitration agreement based on subdivision (f).[4] Under *Viking River*, the court explained, Young's individual and nonindividual claims can be divided, with the individual claims being compelled to arbitration and the nonindividual claims being validly waived:

> "The [*Viking River*] Court found that California law was preempted by the Federal Arbitration Act, and the holding in *Iskanian*[, *supra*,] 59 Cal.4th 348 was abrogated. Essentially, the U.S. Supreme Court explained that a PAGA claim could be subdivided into "individual" and "representative" portions. As a result, the individual claim was subject to arbitration and the representative action waiver was valid."

Finally, the court declined Young's request to stay dismissal of the representative action pending Supreme Court review of *Adolph v. Uber Technologies*, 2022 WL 1073583 (Apr. 11, 2022, G059860, G060198), July 20, 2022, S274671 on the issue of standing to pursue representative claims once individual claims have been ordered to arbitration.

---

[4] Section 432.6, subdivision (a) states: "A person shall not, as a condition of employment, continued employment, or the receipt of any employment-related benefit, require any applicant for employment or any employee to waive any right, forum, or procedure for a violation of . . . this code . . . . Subdivision (f) of that section then states: "Nothing in this section is intended to invalidate a written arbitration agreement that is otherwise enforceable under the Federal Arbitration Act (9 U.S.C. Sec. 1 et seq.)."

Young filed a notice of appeal from the trial court's order.  Axos responded with a motion to dismiss the appeal, which we deferred to be considered with the appeal itself.

## DISCUSSION

A. *The Evolving PAGA Landscape*

PAGA provides "aggrieved employees" with standing "to act as private attorneys general to prosecute and collect civil penalties on the State's behalf" for Labor Code violations.  (*Nickson v. Shemran, Inc.* (2023) 90 Cal.App.5th 121, 127 (*Nickson*).)  The statute defines an "aggrieved employee" as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed."  (§ 2699, subd. (c).)  Despite the "aggrieved employee" having PAGA standing, the state remains the real party in interest on whose behalf the employee seeks PAGA penalties.  (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 81 (*Kim*).)  Over the past decade, the California Supreme Court and United States Supreme Court have issued a series of relevant PAGA decisions.

First, in *Iskanian*, the California Supreme Court held that (1) an employee's waiver of the right to bring a PAGA action is unenforceable as contrary to California public policy, and (2) the Federal Arbitration Act (FAA) does not preempt that rule because PAGA actions are state, not private, actions.  (*Iskanian*, *supra*, 59 Cal.4th at pp. 383–387.)  The court rejected the argument that the arbitration agreement at issue in that case should be enforced because it "prohibits only representative claims, not individual PAGA claims."  (*Id.* at p. 383.)  "Appellate courts interpreted this aspect of *Iskanian* 'as prohibiting splitting PAGA claims into individual and

nonindividual components to permit arbitration of the individual claims.' " (*Nickson*, *supra*, 90 Cal.App.5th at p. 128.)

Next, in *Kim*, our state high court addressed standing to bring a PAGA action. There, the plaintiff employee had settled and dismissed his individual Labor Code claims against his employer. (*Kim*, *supra*, 9 Cal.5th at p. 82.) The settlement excluded the PAGA claim based on the underlying Labor Code violations. (*Id*. at p. 92.) Despite the settlement, the *Kim* court determined that the employee remained "aggrieved" and retained standing to prosecute a PAGA action. (*Id*. at p. 84.) To establish standing, the *Kim* court explained, the PAGA statute merely requires "the *fact* of the [Labor Code] violation" against an employee, which the "[s]ettlement did not nullify." (*Ibid*.)

Subsequently, the United States Supreme Court overturned *Iskanian* in part when it addressed FAA preemption of California's PAGA waiver rule and the bifurcation of PAGA claims. (*Viking River*, *supra*, 142 S.Ct. at pp. 1924–1925). The *Viking River* court concluded that PAGA claims can be divided into individual and nonindividual claims. (*Ibid*.) And while "*Iskanian*'s rule remains valid" as to the wholesale waiver of the right to bring nonindividual claims, the FAA preempts the rule as to agreements to arbitrate individual PAGA claims. (*Ibid*.) As a result, an employee's agreement to arbitrate individual PAGA claims is valid, and the bifurcated individual claims can be ordered to arbitration. (*Ibid*.) Further, despite the California Supreme Court's holding in *Kim*, the *Viking River* court suggested that once individual claims are ordered to arbitration, the employee lacks standing under PAGA to pursue the representative claims. (*Id*. at p. 1925.)

7

After Young and Axos submitted their briefing here, the California Supreme Court issued the *Adolph* decision, repudiating *Viking River*'s interpretation of California law as to standing under PAGA: "Where a plaintiff has brought a PAGA action comprising individual and non-individual claims, an order compelling arbitration of the individual claims does not strip the plaintiff of standing as an aggrieved employee to litigate claims on behalf of other employees under PAGA." (*Adolph*, *supra*, 14 Cal.5th at p. 1114 [agreeing with five Court of Appeal decisions, including this court's opinion in *Nickson*, *supra*, 90 Cal.App.5th at p. 130].) Relying on the court's earlier decision in *Kim,* Justice Liu's opinion explained that an employee acquires PAGA standing upon being the victim of a Labor Code violation by his or her employer and does not lose "the status of an 'aggrieved employee' " as a result of "an agreement to adjudicate a plaintiff's individual claim in another forum." (*Adolph*, at pp. 1120–1121.)

B. *Appealability*

Viewed through the lens of *Viking River*, the trial court here issued two related orders: (1) one order dismissed Young's nonindividual PAGA claims, and (2) the other order compelled Young's individual PAGA claims to arbitration. As a preliminary matter, we address appealability of each order.

1. *The Death Knell Doctrine in the PAGA Context*

Ordinarily, parties may appeal only from a final judgment. (See Code Civ. Proc., § 904.1.) The death knell doctrine provides an exception to this general rule, making appealable "an order that (1) amounts to a de facto final judgment for absent plaintiffs, under circumstances where (2) the persistence of viable but perhaps de minimis individual plaintiff claims creates a risk no *formal* final judgment will ever be entered." (*In re Baycol Cases I & II* (2011)

8

51 Cal.4th 751, 759 (*Baycol*).) Thus, "[i]f an order terminates class claims, but individual claims persist, the order terminating class claims is immediately appealable under *Daar*'s death knell doctrine." (*Id.* at p. 762 [citing *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695].)

Although the death knell doctrine arose in the class action context, the First District Court of Appeal applied it in a PAGA action in *Miranda v. Anderson Enterprises, Inc.* (2015) 241 Cal.App.4th 196 (*Miranda*). The *Miranda* court reasoned that class actions and PAGA actions are similar in that they are both representative actions in which a named plaintiff seeks recovery on behalf of nonparties, who are then bound by the judgment. (*Id.* at pp. 201–202.) Although class actions contain procedural requirements that PAGA actions do not, the court determined that these differences are not material for purposes of the death knell doctrine because "[t]he rationale underlying the death knell doctrine ' "that without the incentive of a possible group recovery the individual plaintiff may find it economically imprudent to pursue his lawsuit to a final judgment and then seek appellate review of an adverse class determination," ' thereby rendering the order 'effectively immunized by circumstance from appellate review' (*In re Baycol*, *supra*, 51 Cal.4th at p. 758)–applies equally to representative PAGA claims." (*Id.* at p. 201.) We agree with the *Miranda* court's reasoning.

The two cases relied on by Axos fail to persuade us otherwise. (*Young v. RemX, Inc.* (2016) 2 Cal.App.5th 630 (*Young*); *Munoz v. Chipotle Mexican Grill, Inc.* (2015) 238 Cal.App.4th 291 (*Munoz*).) In both cases, the orders at issue dismissed the plaintiffs' class claims, but the plaintiffs' PAGA claims on behalf of themselves and other aggrieved employees survived. (*Young*, at p. 635; *Munoz*, at p. 311.) The courts in those cases declined to apply the death knell doctrine because the continuation of the representative PAGA

claims prevented dismissal of class claims from having "the 'legal effect' of a final judgment" by providing "ample financial incentive to pursue the remaining representative claims." (*Munoz*, at p. 311.) *Young* and *Munoz* do not suggest the death knell doctrine only applies to class actions; rather, they establish that the survival of *some* representative claims precludes the application of the death knell doctrine.

*2. Order Dismissing Young's Nonindividual Claims*

Applying the first prong of the death knell doctrine to the order dismissing the nonindividual claims, the court's ruling had the effect of a final judgment as to absent employees. The trial court found that under *Viking River*, "the representative action waiver was valid." Given this ruling and Axos's policy to have new employees sign an arbitration agreement, no nonindividual PAGA claims could proceed. (See *Miranda, supra*, 241 Cal.App.4th at p. 202.)

Moving to the second prong of the death knell doctrine, although his individual claims remain viable, the dismissal of the nonindividual claims creates a substantial risk that Young will have insufficient incentive to pursue them. That risk is inherent when individual claims remain, but collective group claims have been extinguished:

> "This risk of immunity from review arose *precisely, and only, because* the individual claims lived while the class claims died. As the United States Supreme Court has explained, '[t]he "death knell" doctrine *assumes* that without the incentive of a possible group recovery the individual plaintiff may find it economically imprudent to pursue his lawsuit to a final judgment and then seek appellate review of an adverse class determination.' "

(*Baycol, supra*, 51 Cal.4th at p. 758 [emphasis added].)

10

Axos remarks that neither Young nor his attorney has provided a representation that Young will not pursue his individual PAGA claims due to the dismissal of the representative claims, as existed in *Miranda*. (*Miranda, supra*, 241 Cal.App.4th at pp. 202–203.) We disagree that the death knell doctrine requires this type of evidence; *Baycol* made clear that we "assume" the risk exists "precisely, and only, because" the absence of nonindividual claims realistically eliminates the incentive to pursue the action. The burden is on the defendant to explain why the presumed risk is absent in a particular case, and here Axos has made no attempt to provide that explanation.[5]

Consequently, the order dismissing Young's nonindividual PAGA claims is appealable under the death knell doctrine.

3. *Order Compelling Arbitration*

The parties agree that an order granting a motion to compel arbitration is ordinarily not appealable. (*Nelsen v. Legacy Partners Residential, Inc.* (2012) 207 Cal.App.4th 1115, 1121.) Nor is such an order appealable under the death knell exception, because a motion compelling arbitration is not a de facto final judgment and does not create a risk that there will never be a final judgment. Other courts have questioned how an order compelling

---

[5] For the first time at oral argument, Axos referred to language in the trial court's order dismissing the nonindividual PAGA claims that suggested Young could "apply to this Court to set aside dismissal of the representative action and to reinstate the entire action . . . should new case authority arise before a judgment is entered . . . ." We do not generally consider such arguments. (*Let Them Choose v. San Diego Unified School Dist.* (2022) 85 Cal.App.5th 693, 700, fn. 1.) Even if we were to do so here, the filing of the *Adolph* decision in July 2023 after the completion of briefing in this case does not change the fact that at the time of the filing of the notice of appeal (September 2022), the court's dismissal order effectively disposed of all nonindividual claims.

arbitration of individual claims could become appealable merely because it was issued at the same time as an order dismissing nonindividual claims. (See *Nixon v. AmeriHome Mortgage Company, LLC* (2021) 67 Cal.App.5th 934, 943–944 ["It is far from certain whether the judicially created death knell exception to the one final judgment rule for an order dismissing class claims extends to make appealable an otherwise nonappealable order compelling arbitration when the two orders are issued simultaneously."].) And Young has not advanced any argument why the appealability of the order dismissing the nonindividual PAGA claims under the death knell doctrine would render the concurrent order compelling arbitration of the individual claims immediately appealable.

Alternatively, Young suggested that discretionary writ review would be appropriate "so [the court] can decide the important issue of whether a PAGA Plaintiff loses standing to bring 'non-individual' PAGA claims when their 'individual' PAGA claims are compelled to arbitration." Of course, the basis for this request evaporated after the California Supreme Court issued its decision on that question in *Adolph*. Young has presented no other extraordinary bases for us to exercise discretionary writ review of the order compelling arbitration, nor do we see any. (See *Zembsch v. Superior Court* (2006) 146 Cal.App.4th 153, 160, ["[W]rit review of orders directing parties to arbitrate is available only in 'unusual circumstances' or in 'exceptional situations.' "].) Indeed, Young "may prevail at the arbitration proceeding. If he loses, he can challenge the order compelling arbitration on appeal from any judgment entered on the arbitration award." (*Muao v. Grosvenor Properties* (2002) 99 Cal.App.4th 1085, 1089.)

Consequently, we dismiss Young's appeal of the order compelling arbitration.[6]

C. *Dismissal of Representative Claims*

Turning to the merits of the order dismissing Young's representative claims, the court's ruling that representative claim waivers are valid appears to have been based on the erroneous notion that *Viking River* overturned *Iskanian* in full. Certainly, *Viking River* holds that "the FAA preempts the rule of *Iskanian* insofar as it precludes division of PAGA actions into individual and non-individual claims." (*Viking River*, *supra*, 142 S.Ct. at p. 1924.) But the *Viking River* court made clear that the FAA does not preempt California's prohibition of wholesale representative claim waivers: "[non-individual] claims may not be dismissed simply because they are 'representative.' *Iskanian*'s rule remains valid to that extent." (*Id.* at pp. 1924–1925; *Adolph*, *supra*, 14 Cal.5th at p. 1117 ["In *Iskanian*, we held that a predispute categorical waiver of the right to bring a PAGA action is unenforceable [citation]—a rule that *Viking River* left undisturbed."] and p. 1126 ["As noted, *Viking River* left intact *Iskanian*'s rule against agreements that compel waiver of non-individual claims."].)

Young's waiver of his right to bring private attorney general actions is thus unenforceable as a matter of state law. We must therefore reverse the order dismissing Young's representative PAGA claims.

Under *Viking River* and the Agreement's severability clause, then, Young's individual claims "may be split off and compelled to arbitration, while the remaining nonindividual claims remain for disposition in court."

---

6    Young requests $6,500 in sanctions for Axos's motion to dismiss the appeal. Given the evolving nature of the law surrounding PAGA arbitration and that Axos has prevailed in part on its motion to dismiss, we decline to order sanctions.

13

(*Nickson*, 90 Cal.App.5th at p. 130.)  *Adolph* confirms that Young continues to have standing to pursue representative PAGA claims against Axos despite the court's order compelling Young's individual claim to arbitration.  (*Adolph*, *supra*, 14 Cal.5th at p. 1114.)

## DISPOSITION

The appeal of the order compelling arbitration is dismissed as premature.  The order dismissing Young's representative PAGA claims is reversed, and the matter is remanded for further proceedings consistent with this opinion.  The parties shall bear their own costs on appeal.


DATO, Acting P. J.

WE CONCUR:


DO, J.


BUCHANAN, J.

14