Filed 4/24/24

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| CHRISTINE MATLOCK DOUGHERTY, | |
| Plaintiff and Respondent, | E079741 |
| v. | (Super. Ct. No. CIVSB2209642) |
| U.S. BEHAVIORAL HEALTH PLAN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Michael A. Sachs, Judge. Reversed.

Gibson, Dunn & Crutcher, Kahn A. Scolnick, Thomas Cochrane, Heather Richardson, Isabella Sayyah, Michael J. Holecek, and Matt A. Getz, for Defendant and Appellant.

Shernoff Bidart Echeverria, William M. Shernoff, Travis M. Corby, and Cooper F. Johnson, for Plaintiff and Respondent.

I.

INTRODUCTION

Plaintiff and respondent, Christine Matlock Dougherty sued defendant and appellant, U.S. Behavioral Health Plan, California (USB), for claims associated with her son's healthcare. USB petitioned to compel arbitration of her claims, but the trial court denied the petition on the ground that USB's arbitration agreement was not enforceable because it did not comply with the disclosure requirements imposed by Health & Safety Code section 1363.1 (section 1363.1).

USB argues the trial court's order should be reversed for three reasons: (1) the parties' arbitration agreement delegated the issue of whether the agreement is enforceable to the arbitrator, (2) the arbitration agreement between Dougherty and USB's affiliate complied with section 1363.1 and covers her claims, and (3) the Federal Arbitration Act (9 U.S.C. § 1 et seq.) preempts section 1363.1.

We conclude USB forfeited its delegation-clause argument, but we agree with USB that the trial court erroneously denied USB's petition because USB complied with section 1363.1. We therefore reverse and need not address USB's preemption argument.

II.

FACTUAL AND PROCEDURAL BACKGROUND

Dougherty enrolled herself and her son, Ryan, in a UnitedHealthcare HMO health plan (the plan). Dougherty was offered the plan through her employer via the California Schools Voluntary Employee Benefit Association (CSVEBA). That association and

2

United Healthcare of California entered into a Group Subscriber Agreement (GSA), which outlines the terms under which UnitedHealthcare health plans are offered to the association's members. One of the terms is an arbitration provision that states "[a]ll disputes between [CSVEBA] and UnitedHealthcare shall be resolved by binding arbitration." The next term provides that all disputes between "Member . . . UnitedHealthcare . . . shall be submitted to binding arbitration." The GSA also contains various attachments, which "is an integral part of th[e] Agreement."

Dougherty enrolled in the plan for herself and Ryan by completing and signing an enrollment form in November 2012. In doing so, Dougherty signed and agreed to a "UnitedHealthcare Plan Members Binding Arbitration Agreement" (the plan's arbitration agreement). That agreement states in relevant part: "I AGREE AND UNDERSTAND THAT ANY AND ALL DISPUTES, INCLUDING CLAIMS RELATED TO THE DELIVERY OF SERVICES UNDER THE PLAN AND CLAIMS OF MEDICAL MALPRACTICE . . . *BETWEEN MYSELF AND MY DEPENDENTS ENROLLED IN THE PLAN . . . AND UNITEDHEALTHCARE OF CALIFORNIA, UNITEDHEALTHCARE OR ANY OF ITS PARENTS, SUBSIDIARIES OR AFFILIATES*, SHALL BE DETERMINED BY BINDING ARBITRATION . . . ." (Italics added.) Immediately above the signature line, the agreement states: "My signature below indicates that I have carefully read the above 'Binding Arbitration' language and agree to its terms."

The section immediately after the signature line, titled "UNITEDHEALTHCARE PLAN," contained a "Legal Entities Disclaimer." The disclaimer explained that various companies would provide different services. As relevant here, USB (or another entity) would provide "[b]ehavioral health products."

Enrollees in the plan are provided with a lengthy "Evidence of Coverage" (EOC) booklet that outlines the plan's benefits. Along with detailing plan members' coverage, the EOC also outlines the full terms of the plan's arbitration agreement. Those terms state in relevant part: "All disputes of any kind, including, but not limited to, claims relating to the delivery of services under the plan and claims for medical malpractice between [Dougherty] . . . and UnitedHealthcare . . . will be submitted to Binding Arbitration. . . . Any disputes about the scope of arbitration, about the arbitration itself or whether an issue falls under this arbitration provision will be resolved by the arbitrator . . . . [¶] The arbitration will be performed by JAMS or another arbitration service . . . [and] will be conducted under the JAMS Comprehensive Arbitration Rules and Procedures."

Although the GSA states that the EOC is an "integral part" of the agreement, the EOC does not require enrollees to sign anything.

Plan enrollees, including Dougherty, are also provided a "Behavioral Health Supplement" (the supplement). The supplement explains that it is "a supplement to the [EOC]," and plan members' mental healthcare, including care for substance abuse, is provided by USB. The Supplement goes on: "This [supplement] will help you become more familiar with your Behavioral Health Care benefits. This [supplement] should be

4

used in conjunction with your [EOC]. It is a legal document that explains your Behavioral Health Plan and should answer many important questions about your benefits." Like the EOC, the supplement is an "integral part" of the GSA, although it did not require Dougherty to sign anything.

And, like the plan, the supplement contains an arbitration agreement. It states in relevant part: "Any and all disputes of any kind whatsoever, including, but not limited to, claims for medical malpractice . . . between [Dougherty] . . . and [USB] . . . shall be submitted to Binding Arbitration. . . . [Dougherty] and [USB] further specifically agree that any disputes about the scope of any arbitration or about the arbitration or about the arbitrability of any dispute shall be determined by the arbitrator. [Dougherty] and [USB] are . . . accepting the use of Binding Arbitration by a single arbitrator in accordance with the Comprehensive Rules of JAMS in effect at the time of the arbitration . . . ."

While Ryan was enrolled in the plan, he admitted himself into a residential treatment facility to treat his severe drug addiction USB initially agreed to cover his stay, but USB denied coverage three days later on the ground that Ryan could be treated at home. Shortly after his discharge from the facility, Ryan fatally overdosed. Dougherty then sued USB in the superior court, claiming that its wrongfully denying coverage for Ryan's treatment at the facility caused his death.

In response, USB petitioned to compel arbitration of Dougherty's claims. In its moving papers, USB argued the supplement "govern[ed] the relationship" between Dougherty and USB and was the "health plan contract with [USB] that form[ed] the

5

basis" of Dougherty's claims, while the EOC was "the contract between [her] and [UnitedHealthcare]." USB thus argued the supplement applied to "disputes about behavioral health services." USB also argued, however, that Dougherty had to arbitrate her claims given her signature on the plan enrollment form agreeing to the plan's arbitration agreement, as outlined in the EOC.

Anticipating Dougherty's argument in opposition, USB argued that both arbitration provisions and the enrollment form complied with section 1363.1's disclosure requirements. Because "[a] valid arbitration agreement exists," USB urged the trial court to send Dougherty's claims to arbitration.

USB went on to argue that the trial court "need not go much further than resolving th[e] first gateway question" of whether a valid arbitration agreement exists, because the next question, "whether the arbitration provisions encompass [Dougherty's] claims," was delegated to the arbitrator. In USB's view, "there can be no dispute that the parties delegated questions regarding the scope of the arbitration—*i.e.*, questions about whether the claims alleged here are subject to arbitration—to the arbitrator." USB thus asked the trial court to order Dougherty to arbitrate her claims and stay the case pending the resolution of the arbitration.

Dougherty opposed USB's petition on the ground that her only arbitration agreement with USB—the one contained in the supplement—did not comply with section

6

1363.1, subdivision (d), and thus it was unenforceable.[1]  Although Dougherty agreed that the *plan's* arbitration agreement, as stated in the EOC, complied with the statute given the disclosure on the enrollment form that she signed, that agreement was between Dougherty and UnitedHealthcare.  Dougherty thus argued that because the plan and the supplement are separate contracts between her and separate entities, USB could not "pass off [UnitedHealthcare's] enrollment-form disclosure as its own."  Dougherty then acknowledged that the enrollment form disclosure states she must arbitrate any claims she has against UnitedHealthcare's "'subsidiaries or affiliates,'" but USB did not argue that it was a subsidiary or affiliate of UnitedHealthcare.

In its reply, USB argued at length that it is an "'affiliate'" of UnitedHealthcare because both are subsidiaries of the same parent corporation.  USB supported the argument with a declaration submitted along with its reply (the Nguyen declaration).  USB also argued that no violation of section 1363.1, subdivision (d) occurred because the statute directs only a "health care service plan" to make the required disclosures—as UnitedHealthcare did on the enrollment form—and does not mandate that the disclosures "list every corporate entity to which they apply."

---

[1]  Section 1363.1, subdivision (d) states that "[a]ny health care service plan that includes terms that require binding arbitration to settle disputes and that restrict, or provide for a waiver of, the right to a jury trial shall [display], in clear and understandable language," in a disclosure with three conditions enumerated (a) through (c), "immediately before the signature line provided for the individual enrolling in the health care service plan."

The trial court began the hearing on USB's petition by asking USB why there was an arbitration agreement for USB (the plan/EOC) and another for UnitedHealthcare (the supplement). USB noted there was no evidence in the record on the issue, but surmised that the supplement was necessary to make it "absolutely clear that claims under both pieces of the health plan would be arbitrated." The court replied that it was a "legal problem" that the supplement did not comply with section 1363.1's disclosure requirements.

Dougherty began her argument by objecting to the Nguyen declaration that USB submitted in support of its reply. Dougherty objected only on the ground that the declaration was "new evidence . . . submitted with the reply." When the court asked Dougherty about USB's argument that it is an "affiliate" of UnitedHealthcare, Dougherty argued that none of the documents referred to USB as UnitedHealthcare's affiliate beyond "some very ambiguous terms [that] affiliates could apply."

USB then responded to the court's statement that there are "two separate contracts." USB argued that the plan, as detailed in the EOC, is the "main health plan" and the supplement, which is incorporated into the plan, governs the mental healthcare coverage of the plan. Thus, according to USB, the supplement is "part of the same contract, [the] same health plan."

The trial court then denied USB's petition. The court reasoned that there were "two documents"—the plan enrollment form and the supplement—and USB's argument that the supplement "was necessary just to cover all bases, seems to suggest . . . there was

8

some doubt that the first agreement would, in fact, cover [USB]. And so, in order to cover their bases, they added that second document." But because the supplement did not provide the disclosures required by section 1361.3, even though they "easily could have been" provided, the court denied USB's petition and declined to stay the case.

USB timely appealed.

III.

DISCUSSION

USB contends the trial court erred for three reasons: (1) the issue of "whether [USB's] arbitration agreement was valid under the disclosure requirements of section 1363.1" was delegated to the arbitrator, (2) section 1363.1 did not require USB, as UnitedHealthcare's "affiliate," to make a separate "section 1363.1 disclaimer," and (3) the FAA preempts section 1363.1. We conclude USB forfeited its first argument, agree with its second argument, and need not address its third argument.

A. *Delegation Clause*

The arbitration agreement in the supplement states "any disputes about the scope of any arbitration or about the arbitration or about the arbitrability of any dispute shall be determined by the arbitrator." It then explains that any arbitration between the parties will be conducted according to JAMS rules. Based on these provisions, USB contends the issue of whether the supplement's arbitration agreement with Dougherty was invalid

9

for failing to comply with section 1363.1's disclosure requirements was delegated to the arbitrator to decide, not the trial court.[2]

We conclude USB forfeited the argument by failing to raise it in the trial court. Although USB referenced the delegation clause and JAMS rules below, USB did not argue in its petition, reply, or at the hearing that the arbitrator, not the trial court, should decide whether the arbitration agreement was unenforceable. Instead, USB repeatedly asked the trial court to enforce the agreement and order Dougherty to arbitrate her claims. USB thus forfeited its delegation-clause argument on appeal. (*Mendoza v. Trans Valley Transportation* (2022) 75 Cal.App.5th 748, 770-771; *Williams v. West Coast Hospitals, Inc.* (2022) 86 Cal.App.5th 1054, 1071.) We therefore decline to address it.

B. *Section 1363.1*

USB contends the trial court erroneously denied its petition to compel arbitration on the ground that the supplement did not comply with section 1363.1. On this undisputed record, we review the issue de novo. (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 60.)

Section 1363.1 provides that "*[a]ny health care service plan* that includes terms that require binding arbitration to settle disputes and that restrict, or provide for a waiver of, the right to a jury trial shall include, in clear and understandable language, a disclosure that meets" four enumerated conditions. Those conditions are:

---

[2] Although the plan contains a delegation clause that is materially identical to the one in the supplement, USB does not rely on it to support this argument.

10

"(a) The disclosure shall clearly state whether the plan uses binding arbitration to settle disputes, including specifically whether the plan uses binding arbitration to settle claims of medical malpractice.

"(b) The disclosure shall appear as a separate article in the agreement issued to the employer group or individual subscriber and shall be prominently displayed on the enrollment form signed by each subscriber or enrollee.

"(c) The disclosure shall clearly state whether the subscriber or enrollee is waiving his or her right to a jury trial for medical malpractice, other disputes relating to the delivery of service under the plan, or both, and shall be substantially expressed in the wording provided in subdivision (a) of [s]ection 1295 of the Code of Civil Procedure.

"(d) In any contract or enrollment agreement for a health care service plan, the disclosure required by this section shall be displayed immediately before the signature line provided for the representative of the group contracting with a health care service plan and immediately before the signature line provided for the individual enrolling in the health care service plan."

Dougherty contends the trial court correctly denied USB's petition because USB violated section 1363.1, subdivision (d). Dougherty argued below and argues on appeal that USB violated this provision because the supplement controls her claims against USB and USB did not provide a compliant disclosure on an enrollment form, as section 1363.1, subdivision (d) requires. Thus, Dougherty contends she cannot be compelled to arbitration. (*Imbler v. PacifiCare of Cal., Inc.* (2002) 103 Cal.App.4th 567.) The trial

11

court agreed because the supplement, the second of the "two documents" relevant to the trial court's analysis, did not contain a disclosure that complied with section 1363.1.

USB argues this finding was mistaken for several reasons. USB first contends the trial court erroneously based its decision on the plan's EOC and the supplement. According to USB, the only relevant documents for the purposes of section 1363.1 are the GSA and the enrollment form. USB argues this is so because the GSA outlines the terms under which UnitedHealthcare health plans, such as Dougherty's, are offered and administered to CSVEBA members like Dougherty. USB in turn argues that Dougherty's health care service plan is a single plan with services by UnitedHealthcare and USB "packaged and sold together," she "enrolled in them together" by completing the enrollment form, and so she "enrolled in a Plan that included services administered by, among others, *both* [UnitedHealthcare] and [USB]." Thus, in USB's view, the enrollment form's compliance with section 1363.1 was sufficient, and there was no need for the supplement to separately comply with the statute. We agree.

Section 1363.1 provides that "[a]ny health care service plan" that requires arbitration must comply with the disclosure requirements outlined in subdivisions (a) through (d). Thus, by its plain terms, the statute's disclosure requirements apply only to a "health care service plan."

Health and Safety Code section 1345 in turn defines "health care service plan" in relevant part as "[a]ny person who undertakes to arrange for the provision of health care services *to subscribers or enrollees*, or to pay for or to reimburse any part of the cost for

12

those services, *in return for* a prepaid or periodic charge paid by or *on behalf of the subscribers or enrollees*." (Health & Saf. Code, § 1345, subd. (f)(1), italics added.)[3]

On this record, this definition could apply only to UnitedHealthcare. As USB argued below, the only healthcare plan Dougherty enrolled in was her plan with UnitedHealthcare, which included mental health benefits (as outlined in the supplement) and other services (as outlined in the EOC). Dougherty chose to enroll in the plan instead of a different one offered to her. The plan was negotiated with CSVEBA and offered to Dougherty as an employment benefit. Under the plan, CSVEBA (the subscriber) and/or Dougherty (the enrollee) paid UnitedHealthcare to arrange, reimburse, or pay for health care services provided to CSVEBA and/or Dougherty.

In other words, the record shows that Dougherty was an "enrollee" in UnitedHealthcare's plan, which "arrange[d] for the provision of health care services" to her "in return for a prepaid or periodic charge paid by or on behalf of" Dougherty. On the other hand, there is no evidence that Dougherty was an "enrollee or subscriber" of USB, or that USB "arrange[d] for the provision of health care services" for Dougherty "*in return for* a prepaid or periodic charge paid by or on [her] behalf."

Thus, under section 1363.1, the only "health care service plan" at issue that "includes terms that require binding arbitration" is Dougherty's plan with UnitedHealthcare, which includes both the EOC and the supplement as components of

---

[3] Health and Safety Code section 1345, subdivision (f)(2), provides a definition not applicable here concerning health care service providers in foreign countries.

13

the plan. Dougherty agreed to the plan by signing the enrollment form, which is an "enrollment agreement for a health care service plan." (§ 1363.1, subd. (d).)

In our view, this is dispositive. Section 1363.1 applies only to "health care service plans," and Dougherty's plan with UnitedHealthcare is the only "health care service plan." Section 1363.1, subdivision (d) thus applied only to UnitedHealthcare's "contract or enrollment agreement.

Dougherty argues at length as to why the enrollment form's substance violated section 1363.1. In particular, Dougherty contends the form is vague as to whether and which claims against USB would be covered by the arbitration agreement.

However, in the trial court and on appeal, Dougherty identified subdivision (d) of section 1363.1 as the only provision of the statute that USB allegedly violated. That provision relates only to *where* the "disclosure required by" section 1363.1, subdivisions (a) through (c) must be displayed—"immediately before the signature line provided for the individual enrolling in the health care service plan." There is no dispute the enrollment form complied with this directive. And Dougherty makes no attempt to show that the enrollment form's disclosures somehow violated section 1363.1, subdivision (a), (b), or (c).

As a result, we conclude there was no section 1363.1 violation. The trial court erred in finding otherwise and denying USB's petition to compel arbitration on that basis. We therefore reverse its order denying the petition and need not decide whether the FAA preempts section 1363.1, as USB contends.

14

IV.

DISPOSITION

The trial court's order denying USB's petition to compel arbitration is reversed.

USB may recover its costs on appeal.

CERTIFIED FOR PUBLICATION

CODRINGTON

J.

We concur:

MILLER

    Acting P. J.

FIELDS

    J.